Jason N. Haycock (SBN 278983)
jason.haycock@klgates.com
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: +1 415 882 8200
Facsimile: +1 415 882 8220

Allen Bachman (*pro hac vice* to be submitted)
allen.bachman@klgates.com
**K&L GATES LLP**
1601 K Street NW
Washington D.C., 20006-1600
Telephone + 1 202 778 9000
Facsimile + 1 202 778 9100

Michael J. Freno (*pro hac vice* to be submitted)
michael.freno@klgates.com
Jeffrey C. Johnson (*pro hac vice* to be submitted)
jeffrey.johnson@klgates.com
Harold Storey (SBN 268603)
harold.storey@klgates.com
Elizabeth Weiskopf (*pro hac vice* to be submitted)
elizabeth.weiskopf@klgates.com
**K&L GATES LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Telephone: + 1 206 623 7580
Facsimile: + 1 206 623 7022

*Attorneys for Plaintiff Genus Lifesciences Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GENUS LIFESCIENCES INC., | Case No.: |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| LANNETT COMPANY, INC., CODY LABORATORIES, INC., and FIRST DATABANK, INC. | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Genus Lifesciences Inc. ("Genus" or "Plaintiff"), for its Complaint herein, allege as follows:

## **INTRODUCTION**

1. Genus brings this lawsuit under section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), Section 2 of the Sherman Act (15 U.S.C. § 15), Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15(a) and 26), the California Business and Professions Code, §§ 17200 *et seq.,* 17500 *et seq.*, and the common law. Genus's claims against Lannett Company, Inc.

("Lannett"), Cody Laboratories, Inc. ("Cody"), and First Databank, Inc. ("First Databank") (all collectively, "Defendants") arise from Defendants falsely advertising, marketing, and promoting a prescription cocaine hydrochloride solution drug product that is not approved by the U.S. Food and Drug Administration ("FDA"), and their anticompetitive conduct aimed at maintaining a monopoly and preventing Genus from occupying a place in the market.

2.      As of the filing of this Complaint, Genus holds the only FDA approved New Drug Application ("NDA") for cocaine hydrochloride solution in the United States.  On December 14, 2017, FDA granted approval of NDA 209963 permitting Genus to market GOPRELTO® (cocaine hydrochloride nasal solution 4%) for "the induction of local anesthesia of the mucous membranes when performing diagnostic procedures and surgeries on or through the nasal cavities in adults." (Exhibit 1 at 1.)  GOPRELTO® is the first cocaine product ever approved by FDA.

3.      GOPRELTO® is used by physicians on adult patients for the induction of local anesthesia of the mucous membranes during diagnostic procedures and surgeries on, or through, the nasal cavities.  In particular, GOPRELTO® is used by otolaryngologists, commonly known as ENTs (ear, nose and throat specialists), while performing intranasal medical procedures.

4.      Lannett has no FDA approval to market a cocaine product to wholesalers, hospitals, pharmacists, doctors, patients, or anyone else (collectively, "customers") in the United States, including California.

5.      Nonetheless, on information belief, since at least as early as 2008, Lannett and Cody have manufactured, marketed, and sold a cocaine hydrochloride solution 4% product under the brand name C-Topical® ("C-Topical") to customers in the United States, including in California and this judicial district, without any FDA approval or approval from any relevant California act or agency.

6.      Lannett's C-Topical is not FDA approved pursuant to an NDA.  21 U.S.C. § 355(b).

7.      Lannett's C-Topical is not FDA approved pursuant to an Abbreviated New Drug Application ("ANDA").  21 U.S.C. § 355(j).

8.      Lannett's C-Topical is not exempted from the NDA requirement under the Federal Food, Drug, and Cosmetic Act ("FDCA") in order to lawfully market C-Topical in the United States.

9.      Despite having no FDA approval to legally market C-Topical, Lannett and Cody

intentionally mislead, and have misled, customers into believing that C-Topical is FDA approved or authorized by FDA by, among other things: (i) advertising C-Topical as "grandfathered," (ii) advertising C-Topical as marketed under a "preliminary investigational new drug application," (iii) advertising C-Topical as a "Generic Pharmaceutical" and (iv) advertising and packaging C-Topical to look like an FDA approved drug product.

10.     Defendants intentionally mislead, and have intentionally misled, customers by indicating that C-Topical is a superior product to Genus's GOPRELTO® by having broader indications of use.  Defendants' false and misleading advertisements are causing, and have caused, irreparable damage to Genus's business and sale of its competing approved GOPRELTO® product, including in the State of California and this judicial district, and will continue to cause such harm until it is enjoined.  This lawsuit arises from Defendants' false and misleading marketing of C-Topical throughout the United States, including California.

11.     Genus seeks, among other things, to enjoin Defendants' ongoing violations of the Lanham Act, the Sherman Act, the Clayton Act, the California Business and Professions Code, and the common law; and to stop Defendants from unfairly competing with Genus's GOPRELTO® product by virtue of Defendants' false advertising, marketing, promoting, selling, and distributing their unapproved C-Topical.  Genus also seeks damages resulting from Defendants' unfair and unlawful conduct as set forth in the Prayer for Relief.

## THE PARTIES

12.     Genus is a Pennsylvania corporation organized under the laws of the State of Pennsylvania, with a principal place of business at 514 North 12th Street, Allentown, Pennsylvania 18102.

13.     On information and belief, Lannett is a corporation organized under the laws of the State of Delaware, with a principal place of business at 9000 State Road, Philadelphia, Pennsylvania 19136.

14.     On information and belief, Cody is a corporation organized under the laws of the State of Wyoming, with a principal place of business at 601 Yellowstone Avenue, Cody, Wyoming 82414, and Cody is the wholly owned subsidiary of Lannett.  On information and belief, Cody

manufactures the finished dosage form of C-Topical at its facility in Cody, Wyoming.  Cody also packages C-Topical.  Lannett includes its name on the packaging and drug as the "labeler".

15.     On information and belief, First Databank is a corporation organized under the laws of the State of Missouri, with a principal place of business at 701 Gateway Blvd., Suite 600, South San Francisco, California 94080.

## JURISDICTION AND VENUE

16.     This action arises under the Lanham Act, 15 U.S.C. § 1125(a), under antitrust laws of the United States, including Section 2 of the Sherman Act, 15 U.S.C. § 15, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26, under the statutory law of the State of California, and under the common law.  This Court has subject matter jurisdiction for each of the claims herein:

(a)     False or misleading representations of fact and unfair competition violate section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and this Court has original jurisdiction over such claims by virtue of 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338;

(b)     Unfair competition violates the California Business and Professions Code, § 17200 *et seq.*, and this Court has supplemental jurisdiction over those claims by virtue of 28 U.S.C. § 1367(a);

(c)     False advertising violates the California Business and Professions Code, § 17500 *et seq.* , and this Court has supplemental jurisdiction over those claims by virtue of 28 U.S.C. § 1367(a);

(d)     Unfair competition violates California common law, and this Court has supplemental jurisdiction over those claims by virtue of 28 U.S.C. § 1367(a); and

(e)     Anticompetitive conduct to maintain a monopoly violates Section 2 of the Sherman Act, 15 U.S.C. § 15, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26, and this Court has original jurisdiction under 28 U.S.C. § 1337 and 28 U.S.C. § 1331.

17.     On information and belief, this Court has personal jurisdiction over Lannett because Lannett has purposefully availed itself of the California market and has purposefully directed its business activities into this state, including the Northern District of California ("District").

18.     On information and belief, Lannett has extensive contacts with California and this

District, and Lannett has purposefully directed the unapproved C-Topical to be advertised, promoted, and sold in this District.  Lannett has deliberately taken advantage of the California market to profit from its false advertising of the unapproved C-Topical.

19.     On information and belief, Lannett has intentionally targeted one of the largest U.S. markets for pharmaceuticals—California.  On information and belief, Lannett employed a sales force to promote and sell the unapproved C-Topical to ENTs and plastic surgeons for oral, nasal, and laryngeal surgeries in California, specifically this District, from about 2014 to 2018.  (*See, e.g.*, Exhibit 2 at 52.)  On information and belief, Lannett's sales force communicated with physicians, hospitals, and surgery centers to ensure the facilities had adequate supply of the unapproved C-Topical.  On information and belief, such customers purchasing Lannett's unapproved C-Topical located in the State of California, including this District, have actually been misled by the packaging and false advertising related to the unapproved C-Topical.

20.     On information and belief, Lannett has previously hired, and currently hires, consultants residing in California to advise on business operations.

21.     On information and belief, Lannett has previously submitted to the jurisdiction of California, as Lannett has previously been sued in California without objecting on the basis of lack of personal jurisdiction.  *See, e.g.*, *Robert Horowitz et al. v. Caraco Pharm. Labs., Ltd. et al.*, No. 2:10-cv-00298-GHK-JEM (C.D. Cal. 2010).

22.     Lannett regularly conducts business in the State of California and throughout the United States.  Lannett markets and sells products to nationwide retail drugstore chains, including those with locations in this District, as well as through nationwide wholesalers and distributors, and others who target this District.  Lannett has purposefully and voluntarily placed the unapproved C-Topical into the stream of commerce with the knowing expectation that it will be purchased by consumers in this District, and with the result that it has in fact been purchased by consumers in this District.

23.     On information and belief, Cody manufactures and packages unapproved C-Topical sold by Lannett, and places that product into the stream of interstate commerce with the knowledge that Lannett will sell it in the state of California.  On information and belief, Cody distributes, or

causes to be distributed, the unapproved C-Topical to wholesalers and distributors around the nation, including California and this District.

24.     On information and belief, Lannett and Cody have intended to profit, and do profit, from the sale of unapproved C-Topical in California.

25.     On information and belief, Cody and Lannett purposefully and consistently sell and distribute unapproved C-Topical into California, competing with Genus in the California market, and causing harm to Genus every time a customer in this District chooses the unapproved C-Topical product over FDA approved GOPRELTO®.  Genus has suffered competitive harm in the California marketplace through the diversion of sales by Cody and Lannett's false advertising.

26.     The harm Genus has suffered, including lost sales of its FDA approved GOPRELTO® in the state of California, due to Lannett's and Cody's false and misleading advertising and other acts of unfair competition in this state, arises directly out of Lannett's and Cody's California contacts, and would not have arisen but for Lannett's and Cody's California activities.

27.     On information and belief, this Court has personal jurisdiction over First Databank because First Databank's principal place of business is located in South San Francisco, California.

28.     Venue is proper in this District under 28 U.S.C. § 1391(b)–(c).

### GENUS'S FDA APPROVED GOPRELTO®

29.     To gain FDA approval of its GOPRELTO® product, Genus performed five clinical trials, comprising 742 human subjects: one Phase 3 pivotal clinical safety and efficacy trial, one pharmacokinetic study, one study on renally impaired patients, one study on hepatically impaired patients, and one thorough cardiac safety study looking for specific heart arrhythmias.  Additionally Genus performed ten non-clinical trials to further examine the safety of GOPRELTO® and its intended use.  On information and belief, no other company to date has invested the time, resources, costs, and efforts to successfully obtain FDA approval for a cocaine hydrochloride product.

30.     Based on all of Genus's work, FDA approved GOPRELTO® on December 14, 2017, "for the induction of local anesthesia of the mucous membranes when performing diagnostic procedures and surgeries on or through the nasal cavities in adults."  (Exhibit 1 at 1.)  FDA determined that GOPRELTO®'s route of administration is "nasal."

31.    GOPRELTO® is provided in single-use bottles with the following FDA approved label on each bottle.



(Exhibit 3 at 1, 17.)

32.    Genus's single-use bottles are packaged inside an FDA labeled carton:



(*Id.* at 18.)

33.     Inside the carton is a package insert containing FDA approved language for the administration GOPRELTO®.  (Exhibit 3.)

34.     All aspects of Genus's drug label, packaging, and package insert are regulated and approved by FDA.

35.     As of the filing of this Complaint, Genus holds the only FDA approval for a cocaine product.  (Exhibit 4.)  Genus makes, sells, or offers to sell, its FDA approved cocaine hydrochloride solution 4% as both branded GOPRELTO® and an authorized generic of GOPRELTO® (collectively, "GOPRELTO®").

## BACKGROUND ON UNAPPROVED MARKETED DRUGS

36.     Most prescription drug products marketed in the United States must have FDA approval.  However, some old drugs, typically those manufactured before 1962, could theoretically be "grandfathered" under specific provisions of the FDCA. These grandfather provisions are not applicable to Lannett's C-Topical product.

37.     Congress enacted the Federal Food & Drugs Act in June 1906 (the "1906 Act"), which made it unlawful to "manufacture . . . any article of food or drug which is adulterated or misbranded . . . ." 21 U.S.C. § 1 (1906) (repealed in 1938 by 21 U.S.C. § 329(a).)  The 1906 Act did not require drugs to be approved by an administrative agency like FDA—which did not exist at the time.

38.     In 1938, Congress passed the landmark Federal Food, Drug, and Cosmetic Act (the "1938 FDCA"), which repealed the 1906 Act, and for the first time required all "new drugs" to be approved for safety. A drug already on the market before the June 25, 1938 enactment date, however, is exempt from the "new drug" status pursuant to a grandfather clause so long as it is sold with, *inter alia*, the same chemical composition and indications. 21 U.S.C. § 201(p), § 321(p)(1) (1938).

39.     In 1962, Congress amended the 1938 FDCA to require "new drugs" to be demonstrably effective for a specified use as well as being safe.  Drug Amendments of 1962, Pub. L. No. 87-781, § 102, 76 Stat. 780, 781–82 (1962).  The amendments included another grandfather

clause, exempting older drugs from the new effectiveness requirement if, among other requirements, their composition and labelling had not changed since the October 10, 1962 enactment date. *Id*. § 107(c)(4).

40.    In 1984, after about 40 infants died after taking unapproved Vitamin E intravenous injections (E-Ferol), the FDA created a program called the "Prescription Drug Wrap-Up" to identify the universe of unapproved drugs in the United States. (Exhibit 5 at 6; Exhibit 6 at 10.)  FDA identified approximately 5,150 unapproved, marketed products.  (Exhibit 5 at 6 n.14.)  According to FDA, each of these drugs is illegally marketed unless the manufacturer establishes that the drug is grandfathered.  (*Id*. at 6.)

41.    In 2006 and 2011, FDA published "guidances"—nonbinding recommendations—to encourage makers of unapproved drugs to seek formal NDA approval for their products.  (Exhibits 6 & 7.)  FDA's stated goals of the 2006 guidance were to "(1) clarify to FDA personnel and the regulated industry how we intend to exercise our enforcement discretion regarding unapproved drugs and (2) emphasize that illegally marketed drugs must obtain FDA approval."  (Exhibit 6 at 2.)

42.    In its 2006 guidance, FDA encouraged pharmaceutical manufacturers to seek formal NDA approval for otherwise previously unapproved marketed prescription drugs, which Genus did by seeking FDA approval for GOPRELTO®.  FDA stated: "Sometimes, a company may obtain approval of an NDA for a product that other companies are marketing without approval.  We want to encourage this type of voluntary compliance with the new drug requirements because it benefits the public health by increasing the assurance that marketed drug products are safe and effective — it also reduces the resources that FDA must expend on enforcement."  (*Id.* at 5 (footnote omitted).)

43.    The difference between approved and unapproved drugs is enormous: Whereas approved drugs are heavily regulated by FDA, unapproved drugs are not actively regulated at all.

44.    For approved drugs, like Genus's GOPRELTO®, FDA preapproves drug and promotional labels and regulates advertisements. *See* 21 U.S.C. §§ 201(n), 321(m), and 352(n); 21 C.F.R. §§ 202.1(e)(1), (3), (l)(2), 201.100(d)(1)–(3).

45.    For unapproved marketed prescription drugs, FDA does not review them for safety or efficacy, and FDA does not review the drug labels, package inserts, or advertisements.  FDA's

1  action on unapproved marketed prescription drugs is binary: FDA either takes enforcement action to

2  remove the unapproved drug from the market, or it does not take immediate enforcement action.

3  **LANNETT FALSELY ADVERTISES**

4  **C-TOPICAL TO MISLEAD CONSUMERS**

5  46.    Lannett falsely advertises its C-Topical in order to trick customers into believing that

6  C-Topical is legally marketed as a "grandfathered" product, is legally marketed as "preliminary new

7  drug application" product, or is already FDA approved, either as a generic of Genus's GOPRELTO®

8  or as a branded drug pursuant to an NDA.  Lannett has intentionally engaged in the targeted delivery

9  of C-Topical into California, including this District, through such false advertising.

10  47.    After FDA expressly "emphasize[d] that illegally marketed drugs must obtain FDA

11  approval" in 2006 (Exhibit 6 at 2), on information and belief, Lannett commercially launched its

12  unapproved C-Topical at least as early 2008.  (*See*, *e.g.*, Exhibit 8 at 2.)

13  48.    On information and belief, Lannett has been the sole supplier of cocaine

14  hydrochloride solution products to ENTs in the United States since 2012.  On information and belief,

15  Lannett has enjoyed a monopoly in the market for cocaine hydrochloride since Lannett's only

16  competitor, Roxane Laboratories, withdrew its product from the marketplace.  This withdrawal was

17  announced during Lannett's fiscal 2010 year.  (*See*, *e.g.*, Exhibit 9 at 6–7.)

18  **Lannett Advertises Its C-Topical as "Grandfathered," Which Is Literally False**

19  49.    Lannett falsely advertises its C-Topical as a "grandfathered" product.

20  50.    On or around February 8, 2018, Lannett advertised to its customers and investors that

21  even though "a competitor [namely, Genus] received approval from FDA to market and sell a

22  Cocaine Hydrochloride topical product" Lannett expects to continue selling its "Grandfathered C-

23  Topical product."  (*See* Exhibit 10 at 31.)

24  51.    On May 7, 2018, Lannett's CEO repeatedly and falsely referred to Lannett's C-

25  Topical as "grandfathered."  (Exhibit 11 at 10 (e.g., "as it relates to the Grandfathered product"; "As

26  it relates to the review of the grandfathered product").)

27  52.    On or around May 8, 2018, Lannett again falsely advertised to its customers and

28  investors that its C-Topical is "grandfathered":  "In December 2017, a competitor [namely, Genus]

received approval from FDA to market and sell a Cocaine Hydrochloride topical product.  This approval affects the Company's [namely, Lannett's] right to market and sell its unapproved Grandfathered C-Topical product." (Exhibit 12 at 31.)

53.    On or around August 28, 2018, Lannett again falsely advertised to its customers and investors that its C-Topical is "grandfathered." (Exhibit 13 at 8.)

54.    On or around November 8, 2018, Lannett again falsely stated the following: "In December 2017, a competitor received approval from the FDA to market and sell a Cocaine Hydrochloride topical product. This approval affects the Company's right to market and sell its unapproved Grandfathered C-Topical product." (Exhibit 14 at 33.)

55.    Lannett's C-Topical is not a grandfathered drug. (*See* Exhibit 15 at 1.)

56.    Back in 2012, Lannett petitioned FDA to acknowledge that Lannett could legally market C-Topical as a "grandfathered" drug. (Exhibit 16.)

57.    On February 24, 2012, Lannett submitted a Citizen Petition to FDA asking FDA to confirm the "grandfather" status of cocaine hydrochloride, pursuant to the 1938 "grandfather clause" of the FDCA, and to "acknowledge that Lannett's . . . Cocaine HCl Product[] may be legally marketed based on [its] 'grandfather' status." (*Id*. at 1.)

58.    In 2015, FDA denied Lannett's Citizen's Petition, finding Lannett did not produce sufficient information to justify the legality or "grandfather" status of its C-Topical. (Exhibit 15 at 16.)

59.    FDA stated: "The evidence you have provided through the Citizen Petition process is inadequate to support a conclusion either that cocaine HCl products in general, or Lannett's cocaine HCl, 40 mg/mL, or cocaine HCl, 100 mg/mL, topical solutions in particular, meet the requirements of the 1938 grandfather clause.  Accordingly, your requests that the Agency affirm the 'grandfather' status of cocaine HCl products in general, and Lannett's Cocaine HCl Products in particular, are denied." (*Id.*)

60.    FDA also stated: "In addition, we deny your request that we acknowledge these products may be legally marketed based on their 'grandfather' status and that, therefore, the new drug requirements, including premarket approval and prescription drug user fees, are not applicable.

Therefore, your request that FDA acknowledge that the new drug requirements, including premarket approval and user fees, are not applicable to Lannett's Cocaine HCl Products is also denied." (*Id.* at 17.)

61.     Lannett's repeated public and commercial statements that C-Topical is "grandfathered" are literally false.

62.     After the December 14, 2017 date when Genus's product received FDA approval, Lannett intentionally misled, and continues to mislead, customers as to the legality and "grandfather" status of C-Topical, falsely suggesting and implying that it is FDA lawfully marketed in the United States, including in California, even though it is not.

**Lannett and Cody Falsely Advertise C-Topical as a**

**Legally Marketed "Preliminary New Drug Application"**

63.     Lannett falsely advertises its C-Topical as legally marketed in the United States, including in California, under a "preliminary new drug application ('PIND')."

64.     On or around August 29, 2016, Lannett stated that "Cocaine Topical® Solution ("C-Topical®") is produced and marketed under a preliminary new drug application ("PIND") in two different strengths and two different size containers. . . . The Company . . . continues to actively market the product utilizing a group of brand representatives in key market locations throughout the United States."  (Exhibit 17 at 7.)

65.     On or around August 28, 2017, Lannett again stated: "Cocaine Topical® Solution ("C-Topical®"), a vertically integrated product, is produced and marketed under a preliminary new drug application ("PIND") in two different strengths and two different size containers. C-Topical® is utilized primarily for the anesthetization of the patient during ear, nose or throat surgery, sinuplasty and in emergency rooms."  (Exhibit 2 at 7.)

66.     On or around August 28, 2018, Lannett again stated: "Cocaine Topical® Solution ("C-Topical®"), a vertically integrated product, is produced and marketed under a preliminary new drug application ("PIND") in two different strengths and two different size containers. C-Topical® is utilized primarily for the anesthetization of the patient during ear, nose or throat surgery, sinuplasty and in emergency rooms."  (Exhibit 13 at 8.)

67.    Legally marketed drugs are restricted to those marketed in accordance with an approved NDA, generic copies of such drugs marketed under an approved ANDA, and drugs that are exempt from the NDA requirement.

68.    Drugs that are exempt from the NDA requirement include pre-1938 and pre-1962 "grandfathered" drugs, drugs subject to an ongoing Drug Efficacy Study Implementation ("DESI") proceeding, General Recognized as Safe and Effective ("GRASE") prescription drugs, and drugs marketed in accordance with a final or tentative Over-the-Counter ("OTC") drug monograph.

69.    C-Topical is not a grandfathered drug, is not subject to an ongoing DESI proceeding, is not a GRASE prescription drug, and is not marketed in accordance with a final or tentative OTC drug monograph.  C-Topical is not marketed pursuant to an NDA or ANDA.

70.    FDA does not permit production or marketing of prescription drug products under a "preliminary new drug application."  "Preliminary new drug application" is not a recognized submission category.  It is a fictitious regulatory category that appears to have been fabricated by Lannett.

71.    By advertising that Lannett is producing and marketing C-Topical under a "preliminary new drug application," Lannett actively and intentionally misleads consumers into believing that it has FDA authorization to produce and market C-Topical.

72.    Lannett's statement and suggestion that it legally markets C-Topical under a "preliminary new drug application" is literally false.

**Lannett Falsely Advertises Its C-Topical as a**

**"Generic Pharmaceutical C-Topical® Solution CII"**

73.    Lannett falsely advertises its C-Topical as "Generic Pharmaceutical C-Topical® Solution CII" to deceive customers into believing that its product is approved by FDA.

74.    Lannett provides a meta description of its webpage for its C-Topical that describes it as follows: "Learn more about the facts and characteristics of the generic pharmaceutical C-Topical® Solution CII."

75.    When a customer searches for "Lannett C-Topical" in Google's search engine, the following result appears:

1
2
3
4
5
6
7
8

Google

lannett c-topical                                              🔍

All      Shopping    News    Images    Maps    More                    Settings    Tools

About 58,100 results (0.33 seconds)

Learn more about C-Topical® Solution CII | Lannett Company
https://www.lannett.com/product/c-topical-solution-cii/  ▾
Learn more about the facts and characteristics of the generic pharmaceutical C-Topical® Solution CII.

9    (See Exhibit 18 for full results from October 22, 2018.)

10        76.    This description in the search result that identifies C-Topical as a "generic

11   pharmaceutical" is called a meta description, which is an HTML attribute that provides a concise

12   summary of a webpage.  Meta descriptions are often one or two sentences long and appear

13   underneath the blue clickable links in a search engine results page.  The meta description appears in

14   the HTML code in the following form:  <meta name="description" content= "A description of the

15   page" />.

16        77.    A meta description is associated to a particular webpage, and in the case above, the

17   meta description is associated with the following URL: https://www.lannett.com/product/c-topical-

18   solution-cii/ ("C-Topical Webpage").  By its nature, a meta description is an advertisement directed

19   at anyone searching for C-Topical via the applicable search engine.

20        78.    The HTML code written by Lannett for its C-Topical Webpage contains the false and

21   misleading meta description describing C-Topical as generic: <meta name="description" content=

22   "Learn more about the facts and characteristics of the generic pharmaceutical C-Topical® Solution

23   CII."/>  (Exhibit 19.)  This description is linked to the C-Topical Webpage: <link rel="canonical"

24   href="https://www.lannett.com/product/c-topical-solution-cii/"/>.  (*Id.*)

25        79.    Lannett's repeated public and commercial statements that C-Topical is "generic" are

26   literally false because C-Topical is not a generic pharmaceutical product.  A generic drug product

27   must have an approved ANDA, which means that it is bioequivalent to an existing approved drug

28   product.  FDA has not approved ANDAs for any generic cocaine hydrochloride products to date.

14
COMPLAINT

80.     After the December 14, 2017 date when Genus's product received FDA approval, Lannett intentionally misled, and continues to mislead, customers as to FDA approval status of C-Topical, falsely suggesting and implying that it is a generic drug product under an approved ANDA, even though it is not.

### Lannett and Cody Package and Advertise Their C-Topical to
### **Mislead Consumers into Falsely Believing C-Topical Is FDA Approved**

81.     Lannett and Cody intentionally mislead customers by making the product packaging for C-Topical look like it is approved by the FDA.

82.     For example, Lannett's and Cody's label on the bottle for C-Topical contains all the hallmarks of an FDA approved label, including storage conditions, prescribing information, National Drug Codes ("NDCs"), controlled substance marks, lot numbers and expiration dates, the date when the bottle label was last revised, the "Rx Only" symbol, strength of the dosage form, bar code, "Lannett" as the labeler, and "Cody Laboratories, Inc." as the manufacturer.  Below is a comparison of the bottle label for Lannett's and Cody' unapproved C-Topical and Lannett's FDA approved Oxycodone Hydrochloride Oral Solution, USP:



(*See* Exhibit 20 (Lannett's C-Topical bottle label); Exhibit 21 (Lannett's oxycodone bottle label).)

83.     Lannett's and Cody's packaging for its C-Topical bottle contains all the hallmarks of

an FDA approved packaging:



(Exhibit 22.)

84.    Lannett's and Cody's package insert is also designed to mislead customers into believing that C-Topical is FDA approved.   (Exhibit 8.)   Lannett's and Cody's package insert incorporates similar sections and uses similar fonts as a package insert for an FDA approved product.  (*See id.*)   The package insert also includes other design themes designed to mislead consumers into believing that C-Topical is FDA approved including an "Rx only" designation and NDCs.  (*Id.* at 1.)

85.    On information and belief, Lannett also has maintained a website for its C-Topical, www.cocainehcl.com, ("Cocaine Website").   The Cocaine Website displays similar sections as a package insert for an FDA approved product, including for example, sections entitled "indication" and "dosage and administration."   (Exhibit 23.)   The Cocaine Website was designed to mislead customers into believing that C-Topical is FDA approved.

86.     Lannett and Cody conspicuously omit from their product packaging, package insert, and the Cocaine Website any disclaimer that C-Topical is not approved by the FDA. A customer looking at the packaging, package insert or Cocaine Website for C-Topical is not warned that C-Topical lacks FDA approval.

87.     To mislead customers further, Lannett obtained a U.S. Trademark Registration for C-Topical. This misleads customers as to the brand status of the drug, suggesting that FDA has approved an NDA authorizing Lannett to market C-Topical. Lannett admits that until recently, it advertised C-Topical as a brand: Lannett "continues to actively market the product utilizing a group of brand representatives in key market locations throughout the United States." (Exhibit 2 at 8.)

88.     On information and belief, Lannett's and Cody's packaging and packaging insert deceives, or has the capacity to deceive, a substantial segment of customers, including pharmacists, into believing that Lannett's and Cody's C-Topical has FDA approval.

89.     On information and belief, Lannett also operates a website at www.lannett.com ("Lannett Website"). On the Lannett Website, Lannett also advertises itself as a pharmaceutical manufacturer that follows FDA regulations for approved drugs. Lannett states that its "leadership is committed to quality, *adherence to FDA standards, and compliance with regulatory requirements to ensure patient safety*." (Exhibit 24 at 1 (emphasis added).) This is false and misleading. C-Topical does not comply with FDA legal and regulatory requirements by adhering to the basic FDA requirement of obtaining approval before marketing. As the owner of an unapproved marketed product, Lannett has not submitted any data to support an NDA approval by the FDA. Its product has not been reviewed by FDA. As such, Lannett's statements are literally false.

90.     The Lannett Website advertises Lannett as the purveyor of generic pharmaceutical products, which implies FDA approval through an ANDA. For example, Lannett states, "[a]s generic pharmaceuticals manufacturers, we serve an important need for the population: making pharmaceutical products affordable." (Exhibit 25 at 1.) Lannett also states "[i]t's important to remember that generic medicines are made to meet the same standards, as provided by FDA, as brand name medicines. Customers may rest assured that generic pharmaceuticals are produced with the same active ingredients and attention to quality as branded versions." (Exhibit 26 at 1.)

91.     By broadly describing itself as a "generic pharmaceuticals manufacturer," Lannett misleads customers into believing that all of its products, including C-Topical, are FDA approved, at least through ANDAs, which is false.  A customer attempting to determine whether the C-Topical product is an FDA approved drug is misled by reviewing Lannett's public commercial statements about its business and products.

92.     On information and belief Cody and/or Lannett maintain a website at www.codylabs.com (the "Cody Website").  The Cody Website states that "Cody Laboratories is committed to compliance with all Local, State, and Federal requirements and regulations governing our business, especially FDA, DEA . . . ."  (Exhibit 27.)  The Cody Website further states that "[o]ur active pharmaceutical ingredients are used in FDA approved commercial drug products," and that "[w]e are actively engaged in continuous improvement of our quality systems in accordance with current FDA guidance."  (*See id.*)  These statements mislead customers into believe that all of the products, including C-Topical are FDA approved, which is false.

93.     Cody's and/or Lannett's statement on the Cody Website that "Our active pharmaceutical ingredients are used in FDA approved commercial drug products" is literally false.  (*Id.*)  The Cody Website identifies Cocaine Hydrochloride, USP as one of Cody's active pharmaceutical ingredients ("APIs").  (Exhibit 28.)  On information and belief, this Cody's Cocaine Hydrochloride, USP is used in C-Topical, which is not an FDA approved commercial drug product.

94.     On information and belief, Lannett and Cody do not want potential customers to know that C-Topical is not FDA approved.

**Lannett Misleads and Deceives Wholesale Distributors,**

**GPOs, IDNs, Price Lists, Pharmacists, Patients, and Doctors as to**

**the Unapproved FDA Status of the C-Topical**

95.     Lannett further misleads customers by providing incomplete or false information about C-Topical to third party intermediaries in the supply chain of pharmaceutical products, including wholesalers, Group Purchasing Organizations ("GPOs"), integrated delivery networks ("IDNs"), and third party managed price lists.

96.     Instead of purchasing a pharmaceutical product like C-Topical directly from a

manufacturer (e.g., Lannett), pharmacists, hospitals, and doctors often purchase prescription products from wholesalers like AmeriSourceBergen Corporation ("ABC"), Cardinal Health, Inc. ("Cardinal"), McKesson Corporation ("McKesson") (headquartered in California and this District) (collectively, "wholesalers").  The manufacturer contracts with the wholesaler to provide a certain amount of the product, and the wholesaler advertises the product to customers through proprietary databases, which allow customers to order the product directly from the wholesaler.  On information and belief, wholesalers collect information about the product directly from the manufacturer.   On information and belief, Lannett contracts with at least one California-based wholesaler for its unapproved C-Topical and sells its product to such wholesaler for distribution in California.  (*See* Exhibit 23 (listing McKesson Corp. as a wholesaler).)  McKesson's website indicates that Lannett's product is "generic" and does not identify Lannett's product as an unapproved drug.

97.     As an alternative to purchasing pharmaceutical products from wholesalers, some healthcare providers (e.g., hospitals and hospital pharmacies) form GPOs and IDNs to aggregate purchasing volume for the purpose of negotiating discounts with manufacturers and wholesale distributors.  Such organizations and networks—which include Intalere, HealthTrust Purchasing Group, LP, MedAssets Company, Novation, LLC, Premier Health, and Kaiser Health Network— maintain agreements with manufacturers for purchasing on a national basis various pharmaceutical products used by hospitals and other health care facilities.  On information and belief, GPOs and IDNs collect information about a particular product directly from the manufacturer.

98.     Wholesalers, GPOs, and IDNs also rely on companies that aggregate third-party drug pricing information ("Price Lists"), which provide pricing information for drugs and pharmaceutical equivalents of those drugs.  Price List companies, such as Medi-Span Ltd. ("Medi-Span") and First Databank, maintain a database that compares drug products and their prices so that wholesalers and customers can see all the alternatives available for a particular medication.  Medi-Span and First Databank assign unique identifying codes for each drug product, thereby allowing price comparison for otherwise pharmaceutically equivalent products.  When a customer wants to purchase a cocaine hydrochloride product, for example, the customer could search for "cocaine hydrochloride" and pull up all available cocaine hydrochloride products and their associated prices.  Price Lists can also be

integrated with other computerized information systems used by, for example, wholesalers, GPOs, hospitals, and insurance companies, to allow purchasers to compare drugs and drug prices.   On information and belief, Price List companies collect information about a particular product directly from the manufacturer.

99.     On information and belief, Lannett misleads customers by providing incomplete or incorrect information to wholesalers, GPOs, IDNs, and Price Lists.   On information and belief, Lannett does not identify C-Topical as "unapproved" to wholesale distributors, GPOs, IDNs, or Price Lists.   When customers search for a "cocaine hydrochloride" product, Lannett is able to conceal the fact that its C-Topical is an unapproved drug without FDA authorization.   For example, on information and belief, McKesson reports both Genus's FDA approved GOPRELTO® product and Lannett's unapproved C-Topical using descriptions that do not indicate FDA approval status.

100.     Because Lannett does nothing to identify C-Topical as "unapproved" on its product packaging, package insert, or Cocaine Website, wholesale distributors, GPOs, IDNs, and Price Lists cannot accurately describe Lannett's C-Topical as unapproved by the FDA.   As a result of Lannett's misrepresentations, the databases and Price Lists managed by these third parties do not differentiate Genus's GOPRELTO® from Lannett's C-Topical product, causing further deception and confusion by customers, including retail pharmacists, hospital pharmacists, and hospital administrators.   On information and belief, Lannett is aware that buyers believe that all prescribed drugs identified in the Price Lists are FDA approved.

**FDA Approval Status of a Prescription Drug Is Material to Customers**

101.     The FDA approval status of a prescription drug is material to customers because approved drugs provide customers assurance as to the quality of the product not afforded to unapproved prescription drugs.   Because the marketing of unapproved drugs is not FDA regulated, such marketing may present a serious safety issue to customers.   (*See* Exhibit 29 at 1 ("Unapproved drugs are *not* generic medications, and neither their safety nor their efficacy can be assured"); Exhibit 6 at 1–2; Exhibit 7 at 3.)

102.     On information and belief, despite customers' preference for FDA approved prescription drugs, customers are misled to purchase and dispense Lannett's C-Topical because they

believe that all prescription drugs are FDA approved.  For example, a nationwide survey of 500 pharmacists found that 91% thought all products pharmacists dispense are FDA approved.  (Exhibit 30 at 3.)  FDA also recognizes that healthcare providers are confused by unapproved drugs:

> Many healthcare providers are unaware of the unapproved status of drugs and have continued to unknowingly prescribe them because the drugs' labels do not disclose that they lack FDA approval.  In addition, since many unapproved drugs are marketed without brand names and have been available for many years, it is often assumed that these unapproved drugs are generic drugs.  This is not correct. Generic drugs have been evaluated and approved by FDA to demonstrate bioequivalence to a brand name reference drug.

(Exhibit 29 at 1.)

103.    Preying upon the misconception of pharmacists, healthcare providers, and the public, including upon information and belief, in California and this District, Lannett falsely advertises its C-Topical product as an approved drug.  Because customers are misled to believe C-Topical is FDA approved or otherwise authorized by FDA, customers choose to purchase Lannett's C-Topical product over Genus's product, thereby, directly harming Genus.

104.    On information and belief, if customers, including pharmacists and doctors, knew that Lannett's C-Topical product was unapproved, they would not purchase it or distribute it to patients.

**LANNETT, CODY, AND FIRST DATABANK FALSELY ADVERTISE**
**C-TOPICAL AS INDICATED FOR ORAL, LARYNGEAL, OR NASAL TOPICAL**
**ADMINISTRATION WITH THE INTENT TO MISLEAD CONSUMERS INTO**
**BELIEVING THAT ITS PRODUCT IS SUPERIOR TO GENUS'S GOPRELTO®**

105.    FDA has not reviewed for approval any aspect of Lannett's C-Topical.  Lannett's product, product label, and packaging are not FDA approved or pre-approved by the FDA.

106.    Because Lannett's C-Topical is a not approved by the FDA, all of Defendants' public statements about C-Topical to customers constitute commercial speech subject to the Lanham Act.  For example, because Lannett's package insert was not reviewed for approval by the FDA, the package insert is a mere advertisement for Lannett's C-Topical product.

**Lannett Falsely Advertises Its Route of Administration and Uses**

107.    Lannett falsely advertises C-Topical as a "topical solution . . . indicated for the

introduction of local (topical) anesthesia of accessible mucous membranes of the oral, laryngeal, and nasal cavities."  (Exhibit 8 at 1.)

108.    Lannett's C-Topical is not indicated for the introduction of local anesthesia to the outer surface of the body.

109.    Lannett's advertisement of the route of administration for C-Topical as "topical" is false, misleading, and unsubstantiated.

110.    On information and belief, Lannett directed its sales representatives to market C-Topical for oral, nasal, and laryngeal surgeries to hospitals, surgery centers, and health care providers in California, including in this District.

111.    Lannett's advertisement of the use of C-Topical orally or laryngeally falsely implies that a cocaine hydrochloride solution product has been approved by FDA for those uses.  FDA has never approved any cocaine hydrochloride product for oral anesthesia.  FDA has never approved any cocaine hydrochloride product for laryngeal anesthesia.  Furthermore, Lannett's marketing its C-Topical for oral or laryngeal use falsely implies that FDA has approved a cocaine hydrochloride product for oral or laryngeal use.

112.    By advertising C-Topical as a topical solution for oral and laryngeal use, Lannett misleads customers into believing that Lannett's C-Topical has more uses, i.e., accessible mucous membranes of the oral and laryngeal cavities, than Genus's GOPRELTO®, making it more desirable for pharmacists to stock at their pharmacy.

113.    Based on Lannett's false advertisement of its C-Topical as a topical product with unsubstantiated uses, Lannett falsely implies that its C-Topical is a better product than GOPRELTO®.  Whereas GOPRELTO® (cocaine hydrochloride 4% solution) is approved by FDA as an intranasal product indicated for "the induction of local anesthesia of the mucous membranes when performing diagnostic procedures and surgeries on or through the nasal cavities in adults," Lannett falsely advertises its C-Topical (cocaine hydrochloride 4% solution) as a topical product indicated "for the introduction of local (topical) anesthesia of accessible mucous membranes of the oral, laryngeal and nasal cavities."  (Exhibit 8 at 1 (emphasis added).)  Lannett misleads customers by suggesting that its C-Topical is superior, better, or has more uses than GOPRELTO®.

114.    On information and belief, customers are actually deceived by Lannett's advertisement of C-Topical into believing it is superior because it has more uses than Genus's FDA approved GOPRELTO®.

**First Databank Falsely Advertises C-Topical's Route of Administration and Uses and**
**Falsely Advertises that C-Topical Is the Only Cocaine Hydrochloride 4% Solution**

115.    First Databank falsely advertises Lannett's C-Topical by characterizing it as having a "topical" route of administration.

116.    First Databank assigns a unique Clinical Formulation ID ("CFI") (formerly Generic Code Number) to drug products based on ingredient, strength, dosage form, and route of administration.  Two drug products with the same ingredient, strength, form, and route are assigned the same CFI and are "linked" such that when one product is searched for in the database, the other will appear as a substantive alternative.

117.    Although GOPRELTO® and C-Topical are both cocaine hydrochloride 4% solutions, have the same ingredient (cocaine hydrochloride), same strength (4%), and same dosage form (solution), GOPRELTO®'s route of administration is "intranasal" whereas First Databank falsely characterizes C-Topical route of administration as "topical."  As a result of the different routes of administration shown by First Databank, First Databank assigns different CFIs to GOPRELTO® and C-Topical as shown below:

| NDC | Brand Name | Generic Name | Strength | Dosage Form | Package Size | Labeler Name | Multi-Source/Single Source Indicator | Clinical Formulation ID (GCN Seq No) |
|---|---|---|---|---|---|---|---|---|
| 00527-1728-73 | COCAINE HCL | cocaine HCl | 4 % | SOLUTION, NON-ORAL | 10.000 | LANNETT CO. INC | Single Source | 7481 |
| 00527-1728-74 | COCAINE HCL | cocaine HCl | 4 % | SOLUTION, NON-ORAL | 4.000 | LANNETT CO. INC | Single Source | 7481 |
| 64950-0359-04 | GOPRELTO | cocaine HCl | 4 % | SOLUTION, NON-ORAL | 4.000 | GENUS LIFESCIEN | Single Source | 78068 |
| 64950-0362-04 | COCAINE HCL | cocaine HCl | 4 % | SOLUTION, NON-ORAL | 4.000 | GENUS LIFESCIEN | Single Source | 78068 |

(Exhibit 31.)

118.    First Databank's categorization of C-Topical based on CFI Code is false and misleading.  First Databank deceives customers by assigning different CFI codes to GOPRELTO® and C-Topical.  For example, if a customer who previously purchased Lannett's unapproved C-Topical product attempts to "reorder" it, the customer will not see GOPRELTO® or its authorized

generic product.   On information and belief a customer would expect to see all available alternatives when reordering.  As a result, customers are deceived into believing that Lannett's C-Topical is the only cocaine hydrochloride 4% solution that is available on the market, which is literally false.

119.    Furthermore, because wholesale distributors use First Databank's CFI codes to compare products, customers of wholesale distributors do not see GOPRELTO® or its authorized generic product as an alterative to the unapproved C-Topical.  On information and belief, wholesale distributors would expect to see all available alternatives when reordering.

120.    As a result, the buyers are deceived into believing that Lannett's C-Topical is the only cocaine hydrochloride 4% solution available on the market, which is literally false.

121.     This deception directly influences purchasing decisions throughout the United States, including California, and directly injures Genus's sale of GOPRELTO® or its authorized generic.

**First Databank Knowingly Contributes to Lannett's False Advertisement**

122.    First Databank not only directly misleads customers through its characterization of C-Topical as "topical," First Databank also knowingly and materially participates in Lannett's false advertising of C-Topical.

123.    Genus notified First Databank about the misleading advertisement of Lannett's C-Topical no later than October 2, 2018.  On information and belief, First Databank continues to falsely assign C-Topical a different CFI than GOPRELTO® or its authorized generic.

**LANNETT & CODY ENGAGE IN ANTICOMPETITIVE CONDUCT TO MAINTAIN A MONOPOLY OVER THE COCAINE HYDROCHLORIDE MARKET**

124.    As mentioned in Paragraph 48, Lannett and Cody have been the sole suppliers of cocaine hydrochloride solution products to ENTs in the United States since 2012.

125.    Even after the launch of Genus's GOPRELTO® product, Lannett and Cody have maintained more than 99% of the market of cocaine hydrochloride in the United States.

**The Relevant Market Is Limited to Cocaine Hydrochloride Solution Products**

126.    The relevant market to determine Lannett's and Cody's anticompetitive conduct is the market for cocaine hydrochloride solution.  This market includes both the FDA approved and unapproved versions of cocaine hydrochloride solution.

127.     Genus manufactures and markets GOPRELTO®, the only FDA approved version of cocaine hydrochloride solution in the United States.  Lannett manufactures C-Topical, the only non-FDA approved version of cocaine hydrochloride solution in the United States.  C-Topical has the same active ingredient, the same strength, and the same dosage form as GOPRELTO®, making them commercially equivalent.  As such, each drug is interchangeable with the other for certain medical uses, including GOPRELTO®'s approved indicated use.

128.     On information and belief, cocaine hydrochloride solution is unique because it is the only nasal product that acts as both a vasoconstrictor and local anesthetic.  On information and belief, no other drugs on the market other than GOPRELTO® and C-Topical combine these two characteristics.

129.     No drugs on the market are reasonably and commercially interchangeable in use with cocaine hydrochloride solution due to differences in price, use, side effects, or other characteristics.

130.     A small, but significant, non-transitory price increase above the competitive level for cocaine hydrochloride solution would not induce customers to shift their purchases to any alternative drug or combination of vasoconstrictor and/or anesthetic drugs.

131.     The price of GOPRELTO® and C-Topical does not exhibit a high cross-elasticity of demand with the price of any other product.

132.     Sales of GOPRELTO® and C-Topical comprise the entirety of all sales in the relevant product market for cocaine hydrochloride solution for the purposes of determining the anticompetitive effects of Lannett's conduct.

133.     The geographic market to determine the anticompetitive effects of Lannett's conduct is the United States because the marketing, wholesale distribution, and sale of cocaine hydrochloride solution occurs across the entire nation.

134.     Doctors and healthcare facilities use wholesalers, GPOs, and IDNs to order virtually all of the cocaine hydrochloride solution sales nationwide.  Wholesalers, GPOs, and IDNs use, or rely upon, First Databank's CFI codes to compare products with the same active ingredient, strength, dose, and route of administration.

135.     Significant barriers to entry exist which make it difficult for a third party to enter the

market in a relatively short time period. New entrants into the pharmaceutical industry face extremely large startup costs in the form of research and development, and building manufacturing facilities. Even established players confront substantial costs to manufacture the product in addition to expending considerable resources and time to correctly formulate and develop the drug. Furthermore, FDA awarded Genus's GOPRELTO® new chemical entity exclusivity as the first FDA approved cocaine product, and this exclusivity bars any third-party applicant from seeking FDA approval until December 14, 2022.

### Lannett's Unlawful Monopoly Conduct

136. On information and belief, Lannett began selling its unapproved cocaine hydrochloride product in the United States in 2008. Lannett continues to sell the product in interstate commerce without any FDA approval to this very day.

137. On information and belief, Lannett has enjoyed a monopoly in the market for cocaine hydrochloride solution since 2012. No other providers of cocaine hydrochloride solution existed in the United States until Genus entered the market in 2018.

138. Upon entering the market, Genus took immediate steps to ensure its cocaine hydrochloride solution appeared in First Databank's systems. Genus has confirmed that First Databank correctly lists its product based on active ingredients, strength, and route of administration.

139. To maintain its monopoly, Lannett and Cody devised an anticompetitive scheme to interfere with Genus's access to potential customers and exclude it from the market.

140. Lannett and Cody are able to accomplish this anticompetitive scheme by improperly manipulating First Databank's product categorization processes. Lannett and Cody know that First Databank will assign distinct product codes to two similar products when the route of administration is different, even if all other information is identical.

141. Lannett and Cody knowingly and intentionally misrepresent to First Databank that its product's route of administration is topical when it is actually nasal. Lannett mischaracterizes its product this way in order for C-Topical to receive its own unique CFI code in First Databank's system.

142. If First Databank issued C-Topical and GOPRELTO® the same CFI code, customers

1    looking to order cocaine hydrochloride solution would be presented with both products.  Under such

2    a structure, C-Topical and GOPRELTO® would compete for customers on the basis of price.

3         143.   Lannett and Cody also know that by virtue of being a monopolist for many years,

4    customers are generally not aware that a competing product even exists.  Therefore, when supplies

5    run low, these customers tend to repeat their last order or search directly for C-Topical.  Either way,

6    First Databank's system reveals only one option for the customer: C-Topical.  Lannett makes it

7    prohibitively difficult for customers to find a competing product, much less one that could be

8    cheaper or approved by the FDA.

9         144.   By maintaining different CFI codes in First Databank's systems, Lannett is creating

10   artificial barriers to entry.  Firms looking to compete for the sale of cocaine hydrochloride solution

11   face not only a steep barrier in developing the drug, but a further barrier to overcome Lannett's

12   anticompetitive conduct.  These barriers stifle competition, maintain Lannett's monopoly and cause

13   significant injury to Genus and patients.

14        145.   Despite appearing in First Databank's systems, sales for GOPRELTO® (or its

15   authorized generic) have remained negligible.  Genus sold just 544 bottles from June 2018 until

16   September 2018, compared to over 45,000 bottles for Lannett over the same period of time.  (Exhibit

17   32.)  Even after the advent of GOPRELTO®, Lannett maintains an overwhelming share of the

18   market, being responsible for over 99% of sales.  (*See id.*)

19        146.   Absent Lannett's improper and exclusionary conduct within the First Databank

20   system, the entry of GOPRELTO® should result in lower prices for cocaine hydrochloride solution

21   because consumers would be made aware Genus's alternative lower priced competing product.

22        147.   Despite Genus's pricing GOPRELTO® lower than C-Topical, this lower price has

23   failed to result in appreciable sales for Genus because Lannett's improper exclusionary conduct has

24   interfered with doctors' ability to identify GOPRELTO® as an alternative to C-Topical.

25        148.   Lannett's conduct has maintained the price of its C-Topical product and the market

26   price of cocaine hydrochloride solution above the competitive level.

27        149.   Lannett's anticompetitive scheme has caused direct harm on Genus and competition

28   by committing exclusionary acts to maintain its monopoly.  Genus has suffered injury in the form of

1    lost sales, not to mention the extensive resources it spent to obtain FDA approval and properly enter

2    the market with a safe and effective drug.  Doctors and patients suffer harm because they are forced

3    to pay monopoly prices for an unregulated and unapproved drug.

**COUNT I:**

**FALSE ADVERTISING AND UNFAIR**

**COMPETITION UNDER 15 U.S.C. § 1125(a)**

**(AGAINST LANNETT AND CODY)**

8    150.    Genus realleges and incorporates herein the allegations contained in Paragraphs 1–

9    149 of this Complaint.

10    151.    On information and belief, Lannett and Cody advertise, promote, distribute, and sell

11    their C-Topical throughout the United States and California to wholesale distributors, GPOs, IDNs,

12    hospitals, outpatient centers, pharmacists, physicians, and patients.  Lannett's and Cody's

13    statements, materials, and communications described above are false and misleading representations

14    of fact in commercial advertising or promotion, made in interstate commerce, that misrepresent the

15    nature, characteristics, and qualities of Lannett' and Cody's goods and commercial activities, and

16    deceive and/or have the capacity to deceive a substantial segment of relevant consumers and

17    potential consumers.

18    152.    Lannett and Cody advertise, promote, distribute, and sell their C-Topical in a manner

19    that misleads relevant purchasers into believing that C-Topical is legally marketed and/or FDA

20    approved by making false and misleading statements, omissions, and using other tactics likely to

21    create false impressions and confusion regarding FDA approval status of the C-Topical.

22    153.    Lannett and Cody make literally false statements including (1) that C-Topical is

23    produced and marketed under a PIND and (2) that C-Topical is "grandfathered."  These and similar

24    statements are literally false because FDA does not grant marketing authorization under PINDs and

25    FDA denied Lannett's request to designate C-Topical as a grandfathered drug.

26    154.    Lannett and Cody make other literally false statements in their advertising and

27    promotional materials related to C-Topical.  For example, Lannett and Cody provide a meta

28    description of the webpage for C-Topical that describes it as follows: "Learn more about the facts

and characteristics of the generic pharmaceutical C-Topical® Solution CII." This statement is literally false at least because C-Topical is not a generic pharmaceutical product.

155. Lannett and Cody also intentionally mislead the relevant consumers about FDA approval status of C-Topical through at least their product packaging and package insert, which have all of the hallmarks of FDA approved product packaging and package inserts and omit any statement that the products are not FDA approved. For example, the packaging contains an "Rx only" designation and an NDC as well as other design themes which suggest to pharmacists and other relevant consumers that the product is FDA approved.

156. Lannett's and Cody's deception and intended deception was and is material, in that it is likely to influence relevant consumers' purchasing decisions. FDA approval status of a drug product is material to customers, including pharmacists and end users.

157. As a direct result of Lannett's and Cody's false and misleading descriptions of fact, false and misleading representations, and false and deceptive advertising and unfair competition, there is actual deception or, at a minimum, a tendency to deceive a substantial portion of the intended audience.

158. As a direct result of Lannett's and Cody's false and misleading descriptions of fact, false and misleading representations, and false and deceptive advertising and unfair competition, Genus has suffered, currently suffers, and will continue to suffer damage and irreparable injury, including injury to its business, reputation, and goodwill, including by direct diversion of sales from Genus to Lannett and Cody or by a lessening of the goodwill associated with Genus.

159. Pursuant to 15 U.S.C. § 1117, Genus is entitled to damages for Lanham Act violations, an accounting for profits made by Lannett and Cody on sales of C-Topical, as well as recovery of costs of this action. Furthermore, the conduct alleged herein was undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Genus to recover additional damages and reasonable attorney fees pursuant to 15 U.S.C. § 1117.

160. Lannett's and Cody's conduct has caused, and will continue to cause, immediate and irreparable harm to Genus for which there is no adequate remedy at law. As such, Genus is also

1  entitled to injunctive relief as set forth in 15 U.S.C. § 1116.

2       161.    Lannett's and Cody's unlawful conduct including, *inter alia*, advertising, promotion,

3  selling, and distribution of an unapproved C-Topical has harmed and will continue to irreparably

4  harm Genus and pose grave risks to California purchasers, residents, and other consumers.

5  **COUNT II:**

6  **CALIFORNIA FALSE ADVERTISING LAW**

7  **Cal. Bus. & Prof Code § 17500**

8  **(AGAINST LANNETT AND CODY)**

9       162.    Genus realleges and incorporates herein the allegations contained in Paragraphs 1–

10  161 of this Complaint.

11       163.    California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*, prohibits

12  false and misleading advertising and/or advertising which has the capacity, likelihood or tendency to

13  deceive or confuse the public.

14       164.    Lannett and Cody advertise, promote, distribute, sell, cause to be distributed,

15  authorize the distribution of and/or otherwise disseminate false and/or misleading statements

16  regarding C-Topical, including false and misleading statements regarding C-Topical's approval

17  status.  Lannett's and Cody's advertisements and promotional materials were made and distributed in

18  California and this District and come within the definition of advertising as contained in Business

19  and Professions Code § 17500, *et seq.* in that the product packaging and labeling, and promotional

20  materials were intended as inducements to purchase Lannett's and Cody's C-Topical, and are

21  statements disseminated by Lannett and Cody.

22       165.    On information and belief, Lannett and Cody intend purchasers and users to believe

23  that their C-Topical is FDA approved and/or legally marketed.  On information and belief, Lannett

24  and Cody knew, or in the exercise of reasonable care should have known, that the statements were

25  untrue and/or misleading.

26       166.    Lannett's and Cody's deception and intended deception was and is material, in that it

27  was and is likely to influence relevant consumers' purchasing decisions.  Lannett's and Cody's

28  misrepresentations are likely to deceive and/or mislead a significant portion of the relevant

consumers acting reasonably under the circumstances.

167.   Lannett and Cody prepared and distributed in California and this District via product packaging and labeling, and other promotional materials, statements that falsely advertise C-Topical, falsely misrepresent the nature of the C-Topical, and/or have the capacity, likelihood or tendency to deceive or confuse the public.  Lannett's and Cody's conduct described above violates Cal. Bus. & Prof. Code § 17500 *et seq.*

168.   Lannett's and Cody's conduct has caused damage to Genus's business, reputation, and goodwill, including loss of money and property and will continue to cause harm to Genus, and, unless restrained, will cause further harm to Genus.

169.   As a direct and proximate result of Lannett's and Cody's willful and intentional actions, Genus has and will continue to suffer damages, including lost sales, revenue, market share, and asset value in an amount to be determined at trial.  Genus suffers irreparable damage, and unless Lannett and Cody are restrained, Genus will continue to suffer irreparable damage.

170.   On information and belief, Lannett's and Cody's acts of unfair competition are willful, deliberate, and in bad faith.

171.   Genus is entitled to injunctive relief and restitution under California Bus. & Prof. Code § 17535.

**COUNT III:**

**CALIFORNIA UNFAIR COMPETITION LAW,**

**Cal. Bus. & Prof Code § 17200 *et seq.***

**<u>(AGAINST LANNETT AND CODY)</u>**

172.   Genus realleges and incorporates herein the allegations contained in Paragraphs 1–171 of this Complaint.

173.   California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, provides a private right of action against any person who engages in "unfair competition."  Cal. Bus. & Prof. Code § 17203.  "Unfair competition" includes "any unlawful, unfair or fraudulent business act or practice."  *Id.* § 17200.

174.   The acts of Lannett and Cody, as herein alleged, constitute unlawful, unfair, and

31

COMPLAINT

1   deceptive business practices in violation of Cal. Bus. & Prof. Code § 17200.   Such acts include,

2   without limitation, Lannett's and Cody's unlawful distribution and sale of C-Topical in violation of

3   state and federal law, their unfair competition and false advertising in connection with the marketing

4   and sale of C-Topical in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and Cal.

5   Bus. & Prof. Code § 17500 *et seq.* and Defendants' deceptive statements regarding C-Topical as

6   alleged above.

7          175.   For example, California regulates drugs under the Sherman Food, Drug, and

8   Cosmetic Law, Cal. Health & Safety Code §§ 109875 *et seq.* (the "Sherman Law").   The Sherman

9   Law provides that in relevant part that "[n]o person shall sell, deliver, or give away any new drug"

10  that has not been approved by FDA or by the State of California.   *Id.* § 111550(a)–(b).   C-Topical

11  qualifies as a "new drug" under the Sherman law.   *See*, *e.g.*, Cal. Health & Safety Code § 109980.

12  On information and belief, Lannett and Cody are illegally distributing and/or selling C-Topical for

13  which they have not obtained FDA approval or approval by the State of California in violation of the

14  Sherman Law, and thereby have engaged in an unlawful business practice that constitutes unfair

15  competition in violation of Cal. Bus. & Prof. Code § 17200 *et seq*.

16         176.   On information and belief, Lannett's and Cody's business practices are further

17  unlawful under § 17200, *et seq*. by virtue of Defendant's violations of Cal. Bus. & Prof. Code §

18  17500, *et seq.*, which forbids untrue and misleading advertising.   As alleged above, Defendants have

19  engaged in unfair competition arising under California Business and Professions Code § 17200 *et

20  seq.*, through their conduct alleged herein, inter alia, making untrue and misleading statements in

21  advertisements and promotions causing at least a likelihood of confusion or misunderstanding of

22  FDA approval of the unapproved  C-Topical.   This is an unfair business practice at least because the

23  reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the

24  harm to the alleged victims, and those practices are likely to deceive members of the consuming

25  public in the State of California and this District.   On information and belief, Lannett's and Cody's

26  business practices are further unlawful under § 17200, *et seq*. by virtue of their violations of the

27  Sherman Law's false advertising provisions.

28         177.   Lannett and Cody acted willfully during the time period relevant to this action, and

1   Lannett and Cody unlawfully derived and will continue to derive income, profits, and goodwill from

2   their wrongful activities.  Lannett's and Cody's conduct has caused, and will continue to cause,

3   immediate and irreparable harm to Genus for which there is no adequate remedy at law, including

4   damage to Genus's business, reputation, and goodwill.   As an actual and proximate result of

5   Lannett's and Cody's willful and intentional actions, Genus has and will continue to suffer damages,

6   including lost sales, revenue, market share, and asset value in an amount to be determined at trial,

7   and unless Lannett and Cody are restrained, Genus will continue to suffer irreparable harm.  Genus

8   is entitled to injunctive relief and restitution under California Bus. & Prof. Code § 17203.

9                                      **COUNT IV:**

10                       **CONTRIBUTORY FALSE ADVERTISING**

11                                **15 U.S.C. § 1125(a)**

12                                 **(AGAINST CODY)**

13          178.    Genus realleges and incorporates herein the allegations contained in Paragraphs 1–

14   177 of this Complaint.

15          179.    On information and belief, based on the conduct alleged herein, Lannett has engaged

16   in false advertising that has injured Genus.

17          180.    On information and belief, Cody actively engages in the false advertising, but Cody is

18   alternatively contributorily liable because it knowingly induces, causes, and/or materially

19   participates in Lannett's misleading conduct.   Cody contributes to Lannett's false advertising

20   because, for example, Cody supplies, manufactures, labels, and packages the unapproved C-Topical,

21   knows or should know about Lannett's conduct alleged herein, and directly or indirectly, ships it, to

22   or on behalf of Lannett, into California.  Cody is actively and materially furthering Lannett's false or

23   misleading advertising and promotion of C-Topical as FDA approved and/or legally marketed.

24          181.    Such false or misleading statements about C-Topical have actually deceived or have

25   the tendency to deceive a substantial segment of their audience as to the nature, quality, and

26   characteristics of C-Topical.

27          182.    Such false or misleading statements about C-Topical are material and likely to

28   influence purchasing, dispensing, reimbursement, and stocking decisions of the relevant customers.

183.     The false or misleading representations are made in interstate commerce for commercial purposes.

184.     As a direct and proximate result of Cody's conduct, Genus will suffer damages, including a loss of sales, profits and customers, which Genus would have made but for the false or misleading representations by Lannett and Cody.

185.     Lannett's and Cody's actions as alleged herein will continue to cause irreparable and inherently unquantifiable injury and harm to the public and Genus's business, reputation, and goodwill, unless Lannett's and Cody's unlawful conduct is enjoined by this Court.

186.     Genus is entitled to preliminary and permanent injunctive relief to enjoin Lannett's and Cody's continuing acts pursuant to 15 U.S.C. § 1116.

187.     Genus is entitled to recover all damages sustained on account of Lannett's and Cody's actions, an accounting for profits realized by Lannett and Cody, and the costs of this action pursuant to 15 U.S.C. § 1117.

188.     Cody's actions have been willful and deliberate, entitling Genus to recover treble damages and/or profits.  In addition, this is an exceptional case pursuant to 15 U.S.C. § 1117(a), and Genus is entitled to an award of reasonable attorneys' fees.

### COUNT V:

### FALSE ADVERTISING

### 15 U.S.C. § 1125(a)

### (AGAINST FIRST DATABANK)

189.     Genus realleges and incorporates herein the allegations contained in Paragraphs 1–188 of this Complaint.

190.     First Databank is falsely and misleadingly advertising Lannett's and Cody's C-Topical in First Databank's database as a "topical" route of administration.  First Databank falsely and misleadingly assigns a CFI code to reflect the route of administration and falsely and misleadingly assigns Goprelto® a different CFI code.

191.     Customers use First Databank's CFI Codes to compare products to make purchasing decisions.  Because First Databank falsely and misleadingly assigns a CFI code to C-Topical to

reflect a topical route of administration, customers are deceived into believing that Lannett's C-Topical is the only cocaine hydrochloride 4% solution available on the market, which is literally false.

192.    Such false or misleading statements about Lannett's and Cody's C-Topical will actually deceive or have the tendency to deceive a substantial segment of their audience as to the nature, quality, and characteristics of C-Topical.

193.    Such false or misleading statements about C-Topical are material and likely to influence the purchasing decisions of hospital buyers, wholesalers, third-party payors, claims processors, pharmacists, health care professionals and others in the pharmaceutical industry.

194.    These false or misleading representations are made in interstate commerce for commercial purposes.

195.    As a direct and proximate result of First Databank's conduct, Genus has and will suffer damages, including a loss of sales, profits and customers, which Genus would have made but for the false and misleading representations by First Databank.

196.    First Databank's actions as alleged herein will continue to cause irreparable injury and harm to the public and Genus's business, reputation, and goodwill, unless First Databank's unlawful conduct is enjoined by this Court.

197.    Pursuant to 15 U.S.C. § 1116, Genus is entitled to preliminary and permanent injunctive relief to enjoin First Databank's continuing acts.

198.    Pursuant to 15 U.S.C. § 1117, Genus is entitled to recover all damages sustained on account of First Databank's actions, an accounting for profits realized by First Databank, and the costs of this action.

199.    First Databank's actions have been willful and deliberate, entitling Genus to recover treble damages and/or profits.  In addition, this is an exception case pursuant to 15 U.S.C. § 1117(a) and Genus is entitled to an award of reasonable attorneys' fees.

**COUNT V:**

**CONTRIBUTORY FALSE ADVERTISING**

**15 U.S.C. § 1125(a)**

**(AGAINST FIRST DATABANK)**

200.    Genus realleges and incorporates herein the allegations contained in Paragraphs 1–199 of this Complaint.

201.    On information and belief, based on the conduct alleged herein, Lannett and Cody have engaged in false advertising that has injured Genus.

202.    On information and belief, First Databank is knowingly inducing or causing, and/or materially participating in, the false or misleading advertising and promotion of C-Topical.

203.    First Databank knows and/or intends to participate in the false advertising of C-Topical on First Databank's databases and by pharmacies, insurers, and/or other members of the pharmaceutical industry.

204.    First Databank is actively and materially furthering such false and misleading advertising and promotion of C-Topical.

205.    Such false and misleading statements about C-Topical on First Databank's databases and by pharmacies, insurers, and/or other members of the pharmaceutical industry have actually deceived or have the tendency to deceive a substantial segment of their audience as to the nature, quality, and characteristics of C-Topical.

206.    Such false or misleading statements about C-Topical are material and likely to influence purchasing, dispensing, reimbursement, and stocking decisions of wholesalers, third-party payors, pharmacists, health care professionals and others in the pharmaceutical industry.

207.    These false or misleading representations are made in interstate commerce for commercial purposes.

208.    As a direct and proximate result of First Databank's conduct, Genus will suffer damages, including loss of sales, profits, and customers, which Genus would have made but for the false or misleading representations by First Databank.

209.    First Databank's actions as alleged herein will continue to cause irreparable injury

and harm to Genus's business, reputation, and goodwill unless First Databank's unlawful conduct is enjoined by this Court.

210.   Pursuant to 15 U.S.C. § 1116, Genus is entitled to preliminary and permanent injunctive relief to enjoin First Databank's continuing acts.

211.   Pursuant to 15 U.S.C. § 1117, Genus is entitled to recover all damages sustained on account of First Databank's actions, an accounting for profits realized by First Databank, and the costs of this action.

212.   First Databank's actions have been willful and deliberate, entitling Genus to recover treble damages and/or profits.  In addition, as this is an exception case pursuant to 15 U.S.C. § 1117(a), Genus is entitled to an award of reasonable attorneys' fees.

**COUNT VI:**

**MONOPOLIZATION**

**15 U.S.C. § 2**

**<u>(AGAINST LANNETT AND CODY)</u>**

213.   Genus realleges and incorporates herein the allegations contained in Paragraphs 1–212 of this Complaint.

214.   The relevant product market is the market for cocaine hydrochloride solution products.  This market includes both FDA approved and unapproved versions of the drug.

215.   Lannett and Cody possess monopoly power in the cocaine hydrochloride solution market.

216.   Lannett and Cody have engaged in numerous exclusionary acts designed to unlawfully maintain its monopoly of cocaine hydrochloride solution.

217.   These exclusionary acts include: (a) falsely characterizing Lannett's and Cody's C-Topical as having a "topical" route of administration in order to prevent customers from buying, or even becoming aware of Genus's FDA approved GOPRELTO®; (b) preventing their C-Topical from receiving the same product code as GOPRELTO® by prohibiting First Databank from describing the solution as "nasal"; (c) restricting access to true and  complete information about available products in order to exclude competition by deceiving and misleading healthcare professionals into believing

37

**COMPLAINT**

that no competing cocaine hydrochloride solution product exists; and (d) tricking doctors, patients, and other consumers into believing C-Topical is FDA approved so they will not feel inclined to search for an FDA-approved alternative.

218.    Lannett's and Cody's conduct is aimed at preventing Genus from occupying a place in the market, thereby maintaining a monopoly and depressing Genus' sales.  By impeding doctors and consumers from becoming aware of, and ordering a competing product, Lannett is able to keep the cost of cocaine hydrochloride solution above competitive levels.

219.    This anticompetitive conduct has openly and proximately caused antitrust injury to Genus.  The injuries suffered by Genus are the result of Lannett's exclusionary conduct designed to keep prices above the competitive level.  These injuries are the type the antitrust laws were intended to prohibit.

## PRAYER FOR RELIEF

WHEREFORE, Genus prays that this Court enter judgment against the Defendants as follows:

A.    That Lannett and Cody and all of their respective officers, agents, representatives, employees, attorneys, and all other persons acting in concert with them be permanently enjoined from:

1.    listing the unapproved C-Topical on the prescription drug dispensing databases and in Price Lists, including but not limited to Medi-Span and First Databank, until at least such time as those databases and Price Lists provide clear and conspicuous notice that C-Topical is not FDA approved;

2.    directly or indirectly engaging in false, misleading, or deceptive advertising or promotions of the unapproved C-Topical or using such advertising or promotions to induce others to purchase the unapproved C-Topical over Genus's FDA approved GOPRELTO®;

3.    making or inducing others to make any false, misleading, or deceptive statement of fact, or misrepresentation of fact in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation, or distribution (including but not limited to

repackaging) of the unapproved C-Topical in such a fashion as to suggest that C-Topical is a generic version of Genus's FDA approved GOPRELTO ®;

4.    making or inducing others to make any false, misleading, or deceptive statement of fact, or misrepresentation of fact in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation, or distribution (including but not limited to repackaging) of the unapproved C-Topical in such a fashion as to suggest that C-Topical is superior to Genus's FDA approved GOPRELTO® based on the representation that unapproved C-Topical is approved for oral and laryngeal uses;

5.    making or inducing others to make any false, misleading, or deception statement of the fact, or misrepresentation of fact in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation, or distribution (including but not limited to repackaging) of the unapproved C-Topical in such a fashion as to suggest that C-Topical has a topical route of administration;

6.    making or inducing others to make any false, misleading, or deceptive statement of fact, or misrepresentation of fact in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation, or distribution (including but not limited to repackaging) of the unapproved C-Topical in such a fashion as to suggest that C-Topical is FDA approved;

7.    making or inducing others to make any false, misleading, or deceptive statement of fact, or misrepresentation of fact in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation, or distribution (including but not limited to repackaging) of the unapproved C-Topical in such a fashion as to suggest that C-Topical is a grandfathered drug; and

8.    making or inducing others to make any false, misleading, or deceptive statement of fact, or misrepresentation of fact in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation, or distribution (including but not limited to repackaging) of the unapproved C-Topical in such a fashion as to suggest that C-Topical is approved, or will be approved, under a preliminary new drug application;

B.      That Lannett and Cody be ordered to correct any erroneous impression customers may have derived concerning the nature, characteristics, or qualities of either the unapproved C-Topical or Genus's FDA approved GOPRELTO®, including without limitation:

1.      sending a registered letter (with a copy to Genus) to all databases and Price Lists that list the unapproved C-Topical product, including but not limited to Medi-Span and First Databank, requesting that the unapproved C-Topical be immediately listed as obsolete in said databases and Price Lists, and instructing the database and Price List companies to remove any listing of C-Topical, as soon as commercially possible;

2.      placing corrective advertising, for a period of 12 months, in the form of a printed advertisement on the Defendants' websites stating that the unapproved C-Topical is not FDA approved in a font no smaller than the font used throughout their websites;

3.      placing corrective advertising, for a period of 12 months, in the form of a printed advertisement on the Defendants' websites stating that the unapproved C-Topical is not a grandfathered product in a font no smaller than the font used throughout their websites;

4.      placing corrective advertising, for a period of 12 months, in the form of a printed advertisement on the Defendants' websites stating that the unapproved C-Topical is not approved under a "preliminary new drug application" in a font no smaller than the font used throughout their websites;

5.      providing notice to each person or entity that purchased, dispensed, ordered, and prescribed the unapproved C-Topical (including wholesale generic drug purchasers, pharmacists, GPOs, outpatient centers, hospitals, doctors, and purchasers or buyers of such products) that FDA has approved only Genus's GOPRELTO®;

6.      providing notice to patients that have used the product that C-Topical is not approved by the FDA; and

7.      providing a disclaimer on any C-Topical packaging, including the carton and bottle label, stating that the product is not FDA approved;

C.      That First Databank and all of its respective officers, agents, representatives, employees, attorneys, and all other persons acting in concert with them be permanently enjoined

from publishing false, misleading, and inaccurate information regarding the oral and laryngeal use of unapproved C-Topical, including the claim that C-Topical has a "topical" route of administration;

D.      That Lannett and Cody be adjudged to have violated the provisions of 15 U.S.C. § 1125(a) by unfairly competing against Genus by using false or misleading descriptions or representations of fact that misrepresent the nature, quality, and characteristics of C-Topical;

E.      That First Databank be adjudged to have violated the provisions of 15 U.S.C. § 1125(a) by engaging in false and misleading advertising by using false or misleading descriptions or representations that misrepresent the routes of administration of Lannett's and Cody's unapproved C-Topical product;

F.      Adjudge and decree that Lannett's conduct in the relevant market constitutes unlawful monopolization in violation of Section 2 of the Sherman Act;

G.      That Lannett and Cody be adjudged to have unlawfully competed against Genus by engaging in unfair competition under California Business & Professions Code, § 17200 *et seq.*;

H.      That Lannett and Cody be adjudged to have unlawfully competed against Genus by engaging in false advertising under California Business & Professions Code, § 17500 *et seq.*;

I.      That Lannett and Cody be adjudged to have unlawfully competed against Genus by engaging in unfair competition under the common law;

J.      That Lannett and Cody recall and remove their unapproved C-Topical from the distribution supply chains until such time as they clearly and conspicuously state that the unapproved C-Topical is not FDA approved;

K.      That Genus be awarded damages pursuant to 15 U.S.C. § 1117, sufficient to compensate it for the damage caused by the false, misleading, and deceptive statements by Defendants related to or about C-Topical;

L.      That Genus be awarded profits derived by reason of said acts, or as determined by an accounting;

M.      That such damages and profits be trebled and awarded to Genus and that Genus be awarded its costs, attorneys' fees and expenses in this suit under 15 U.S.C. § 1117, as a result of the willful, intentional and deliberate acts alleged herein in violation of the Lanham Act;

N.      That Genus be awarded damages in an amount sufficient to compensate it for the damage caused by Lannett's and Cody's unlawful competition and false or misleading acts and deceptive trade practices under the California Business and Professions Code, § 17200 *et seq.* and the common law;

O.      That Genus be granted injunctive relief under the California Business and Professions Code, § 17200 *et seq.*;

P.      That Genus be awarded damages in an amount sufficient to compensate it for the damage caused by Lannett's and Cody's unlawful competition and false or misleading acts and deceptive trade practices under the California Business and Professions Code, § 17500 *et seq.* and the common law;

Q.      That Genus be granted injunctive relief under the California Business and Professions Code, § 17500 *et seq.*;

R.      That all of the Defendants' false, deceptive, or misleading materials and products be destroyed as allowed under 15 U.S.C. § 1118;

S.      That an Order directing the termination of anticompetitive behavior, including but not limited to Lannett instructing First Databank to use the same product code for both C-Topical and GOPRELTO;

T.      That Genus be awarded compensatory damages for lost sales of cocaine hydrochloride solution, and profits on those sales that are caused by Lannett's unlawful conduct;

U.      Treble damages and an award of attorneys' fees and costs pursuant to 15 U.S.C. § 15(a);

V.      That each Defendant file, within ten days from entry of an injunction, a declaration with this Court signed under penalty of perjury certifying the manner in which each Defendant has complied with the terms of any injunction;

W.      That Genus be granted pre-judgment and post-judgment interest;

X.      That Genus be granted costs associated with the prosecution of this action; and

Y.      That Genus be granted such further relief as the Court may deem just.

1

## DEMAND FOR JURY TRIAL

2

Genus hereby demands a trial by jury of all issues in this case.

3

4                                          Respectfully submitted,

5    Dated: December 18, 2018        By:        /s/ Jason N. Haycock

6                                          Jason N. Haycock
                                           jason.haycock@klgates.com
7                                          **K&L GATES LLP**
                                           4 Embarcadero Center, Suite 1200
8                                          San Francisco, CA 94111-5994
                                           jason.haycock@klgates.com
9                                          415.882.8200 t
10                                         415.882.8220 f

11                                         Michael J. Freno
                                           michael.freno@klgates.com
12                                         Jeffrey C. Johnson
                                           jeff.johnson@klgates.com
13                                         Harold Storey
                                           harold.storey@klgates.com
14                                         Elizabeth Weiskopf
                                           elizabeth.weiskopf@klgates.com
15                                         **K&L GATES LLP**
16                                         925 Fourth Avenue, Suite 2900
                                           Seattle, WA 98104
17                                         206.623.7580 t
18                                         206.623.7022 f

19

20                                         Allen Bachman
                                           allen.bachman@klgates.com
21                                         **K&L GATES LLP**
                                           1601 K Street NW
22                                         Washington D.C., 20006-1600
                                           202.778.9000 t
23                                         202.778.9100 f

24                                         *Attorneys for Genus Lifesciences Inc.*

25

26

27

28

COMPLAINT