Michael J. Freno (*pro hac vice*)
michael.freno@klgates.com
Jeffrey C. Johnson (*pro hac vice*)
jeffrey.johnson@klgates.com
Harold Storey (SBN 268603)
harold.storey@klgates.com
Elizabeth Weiskopf (*pro hac vice*)
elizabeth.weiskopf@klgates.com
**K&L GATES LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Telephone: + 1 206 623 7580
Facsimile: + 1 206 623 7022

Jason N. Haycock (SBN 278983)
jason.haycock@klgates.com
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: +1 415 882 8200
Facsimile: +1 415 882 8220

Allen Bachman (*pro hac vice* to be submitted)
allen.bachman@klgates.com
**K&L GATES LLP**
1601 K Street NW
Washington D.C. 20006-1600
Telephone + 1 202 778 9000
Facsimile + 1 202 778 9100

Attorneys for Plaintiff Genus Lifesciences, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| GENUS LIFESCIENCES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> LANNETT COMPANY, INC., CODY LABORATORIES, INC., and FIRST DATABANK, INC. <br><br> Defendants. | Case No. 3:18-cv-07603-WHO <br><br> **PLAINTIFF GENUS LIFESCIENCES, INC.'S BRIEF IN OPPOSITION TO LANNETT COMPANY, INC. AND CODY LABORATORIES, INC.'S MOTION TO DISMISS** <br><br> Judge:  Hon. William H. Orrick <br> Hearing Date:  April 3, 2019 <br> Hearing Time:  2:00 p.m. <br> San Francisco Courthouse, Courtroom 2, 17th Floor |

# TABLE OF CONTENTS

**Page**

I. ISSUES TO BE DECIDED ...................................................................................1

II. INTRODUCTION .............................................................................................1

III. BACKGROUND ...............................................................................................3

    A. Unapproved Cocaine Hydrochloride Drugs.................................................3

    B. Genus's FDA-Approved Goprelto® ...........................................................4

IV. LEGAL STANDARD..........................................................................................5

    A. False Advertising ...................................................................................5

    B. Antitrust Violations................................................................................6

V. ARGUMENT ...................................................................................................6

    A. Lannett's Intentional Failure and Concealment of the Unapproved Status of its Cocaine Drug to Mislead Consumers Is Actionable under the Lanham Act .....7

    B. The Specific Examples of Lannett's False and Misleading Statements in Genus's Complaint Demonstrate False Advertising, and Certainly Plead Facts Sufficient to Allow the Court to Draw the Reasonable Inference that Lannett Is Liable for the Misconduct Alleged ...................................................................9

        1. Lannett Advertises Its C-Topical as "Grandfathered," Which Is Literally False ...............................................................................................9

        2. Lannett and Cody Falsely Advertise C-Topical as a Legally Marketed "Preliminary New Drug Application" ..................................................11

        3. Lannett Falsely Advertises Its C-Topical as a "Generic Pharmaceutical C-Topical® Solution CII"................................................................12

        4. Lannett and Cody Package and Advertise Their C-Topical to Mislead Consumers into Falsely Believing C-Topical Is FDA-Approved........13

        5. Lannett Misleads and Deceives Wholesale Distributors, GPOs, IDNs, Price Lists, Pharmacists, Patients, and Doctors as to the Unapproved FDA Status of the C-Topical .........................................................15

        6. Lannett Falsely Advertises Its Routes of Administration and Uses ....16

    C. Genus's Allegations of Monopoly Demonstrate a Classic Case of Anticompetitive Conduct by Lannett................................................................17

        1. Lannett Engages in Exclusionary Conduct By Falsely Characterizing Its Cocaine Drug's Route of Administration and Uses..............................19

OPPOSITION TO LANNETT'S MOTION TO DISMISS; CASE NO. 18-CV-07603

2.      Lannett Engages in Exclusionary Conduct By Manipulating First
Databank into Assigning a Unique CFI Code.......................................20

3.      Lannett Engages in Exclusionary Conduct By Deceiving Doctors and
Patients Into Believing Its Cocaine Drug is FDA-Approved...............21

4.      Lannett Engages in Exclusionary Conduct Through a System of False
Advertising............................................................................................22

VI.     CONCLUSION...........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
   592 F.3d 991 (9th Cir. 2010) ................................................................................................6

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*,
   323 F.3d 366 (6th Cir. 2003) ..............................................................................................22

*Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanich Legal & Prof'l Publ'ns, Inc.*,
   108 F.3d 1147 (9th Cir. 1997) ......................................................................................21, 22

*Arbor Pharm., LLC v. ANI Pharm., Inc.*,
   No. 17-4910, 2018 WL 3677923 (D. Minn. Aug. 2, 2018) ....................................................2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................5

*Bayer Healthcare Pharm. Inc. v. RJ Health Sys. Int'l LLC*,
   No., 15-6952 (KM), 2016 WL 3574325 (D.N.J. June 30, 2016) .........................................12

*Belcher Pharm., LLC v. Hospira, Inc.*,
   No. 8:17-cv-2353-T-30JSS, 2018 WL 4643292 (M.D. Fla. Apr. 9, 2018) ...........................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................5

*Bohsei Enters. Co., U.S.A. v. Porteous Fastener Co.*,
   441 F. Supp. 162 (C.D. Cal. 1977) ........................................................................................9

*Brennan v. Concord EFS, Inc.*,
   369 F. Supp. 2d 1127 (N.D. Cal. 2005) ...............................................................................21

*Brown v. Collections Bureau of Am., Ltd.*,
   183 F. Supp. 3d 1004 (N.D. Cal. 2016) ...............................................................................11

*In re Capacitors Antitrust Litig.*,
   106 F. Supp. 3d 1051 (N.D. Cal. 2015) .................................................................................5

*Cascade Health Solutions v. PeaceHealth*,
   515 F.3d 883 (9th Cir. 2008) ...............................................................................................18

*Catch Curve, Inc. v. Venali Inc.*,
   519 F. Supp. 2d 1028 (C.D. Cal. 2007) ...........................................................................6, 19

*City of Anaheim v. S. Cal. Edison Co.*,
   955 F.2d 1373 (9th Cir. 1992) ..................................................................................19, 21

*In re Delta/Airtran Baggage Fee Antitrust Litig.*,
   245 F. Supp. 3d 1343 (N.D. Ga. 2017) ...........................................................................23

*In re Domestic Airline Travel Antitrust Litig.*,
   221 F. Supp. 3d 46 (D.D.C. 2016) ...................................................................................23

*Duty Free Ams. Inc. v. Estée Lauder Cos.*,
   797 F.3d 1248 (11th Cir. 2015) .......................................................................................22

*Emulex Corp. v. Broadcom Corp.*,
   No. SACV-09-01310, 2010 WL 11595718 (C.D. Cal. June 7, 2010) ...........................24

*Evans v. Gilmore*,
   No. 15-cv-01772-MEJ, 2015 WL 4463747 (N.D. Cal. July 21, 2015) ...........................11

*Free FreeHand Corp. v. Adobe Sys., Inc.*,
   852 F. Supp. 2d 1171 (N.D. Cal. 2012) ......................................................................18, 21

*Ileto v. Glock, Inc.*,
   349 F.3d 11910 (9th Cir. 2003) ..........................................................................................5

*Image Technical Servs., Inc. v. Eastman Kodak Co.*,
   125 F.3d 1195 (9th Cir. 1997) ...........................................................................................18

*In the Matter of U-Haul Int'l, Inc. and Amerco*,
   FTC File No. 0810157 (F.T.C. 2010) ................................................................................23

*JHP Pharm., LLC v. Hospira, Inc.*,
   52 F. Supp. 3d 992 (C.D. Cal. 2014) ........................................................................ passim

*Killian Pest Control, Inc. v. HomeTeam Pest Defense, Inc.*,
   No. 14-cv-05239, 2015 WL 13385918 (N.D. Cal. Dec. 21, 2015) ...................................20

*Lenox MacLaren Surgical Corp. v. Medtronic,
   Inc.*, 762 F.3d 1114 (10th Cir. 2014) ...............................................................................24

*Merck Eprova AG v. Brookstone Pharm., LLC*,
   920 F. Supp. 2d 404 (S.D.N.Y. 2013) ...............................................................................14

*Merck Eprova AG v. Gnosis S.p.A.*,
   760 F.3d 247 (2d Cir. 2014)...............................................................................................14

*MetroNet Servs. Corp. v. Qwest Corp.*,
   383 F.3d 1124 (9th Cir. 2004) .....................................................................................6, 21

*Mutual Pharm. Co. v. Ivax Pharm. Inc.*,
   459 F. Supp. 2d 925 (C.D. Cal. 2006) ...............................................................................22

iv

*Mylan Labs., Inc. v. Matakari,*
   7 F.3d 1130 (4th Cir. 1993) ................................................................................................8, 16

*Novation Ventures, LLC v. J.G. Wentworth Co.,*
   No. 15-cv-954-BRO (C.D. Cal. Sept. 21, 2015).........................................................................13

*Olympia Equip. Leasing Co. v. Western Union Tel. Co.,*
   797 F.2d 370 (7th Cir. 1986) .....................................................................................................21

*Omega Envtl., Inc. v. Gilbarco, Inc.,*
   127 F.3d 1157 (9th Cir. 1997) ...................................................................................................21

*Outdoor Media Grp., Inc. v. City of Beaumont,*
   506 F.3d 895 (9th Cir. 2007) .......................................................................................................5

*Par Sterile Prods. LLC v. Fresenius Kabi USA LLC,*
   No. 14 C 3349, 2015 WL 1263041 (N.D. Ill. Mar. 17, 2015) ...................................................2, 8

*Phototron Corp. v. Eastman Kodak Co.,*
   842 F.2d 95 (5th Cir. 1988) .......................................................................................................25

*POM Wonderful LLC v. Coca-Cola Co.,*
   573 U.S. 102 (2014).................................................................................................................2, 8

*R.J. Reynolds Tobacco Co. v. Phillip Morris, Inc.,*
   199 F. Supp. 2d 362 (M.D.N.C. 2002) ......................................................................................21

*RPost Holdings, Inc. v. Trustifi Corp.,*
   No. 10-cv-1416-PSG, 2012 WL 12952728 (C.D. Cal. May 11, 2012) .......................................10

*Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.,*
   586 F.3d 500 (7th Cir. 2006) .....................................................................................................17

*Schor v. Abbott Labs.,*
   457 F.3d 608 (7th Cir. 2006) .....................................................................................................21

*Sigma Dynamics, Inc. v. E. Piphany, Inc.,*
   No. 04-cv-0569-MJJ, 2004 WL 2648370 (N.D. Cal. June 25, 2004)....................................10, 11

*Skydive Ariz., Inc. v. Quattrocchi,*
   673 F. 3d 1105 (9th Cir. 2012) ....................................................................................................6

*Southland Sod Farms v. Stover Seed Co.,*
   108 F.3d 1134 (9th Cir. 1997) .....................................................................................................8

*Tercica, Inc. v. Insmed Inc.,*
   No. 05-cv-5027-SBA, 2006 WL 1626930 (N.D. Cal. June 9, 2006)..........................................10

*Toyota Motor Sales, U.S.A., Inc. v. Tabari,*
   610 F.3d 1171 (9th Cir. 2010) ...................................................................................................13

v

*TrafficSchool.com, Inc. v. Edriver, Inc.*,
    653 F.3d 820 (9th Cir. 2011) ...........................................................................................8

*U-Haul Int'l, Inc. v. Jartran, Inc.*,
    522 F. Supp. 1238 (D. Ariz. 1981), *aff'd* 681 F.2d 1159 (9th Cir. 1982)........................9

*United Food & Commercial Workers Local 1776 v. Teikoku Pharma USA, Inc.*,
    74 F. Supp. 3d 1052 (N.D. Cal. 2014) ..........................................................................21

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) .........................................................................................18

*Valeant Pharm. N. Am. LLC v. Belcher Pharm., LLC*,
    No. 17-cv-06731-RS, 2019 WL 266271 (N.D. Cal. Jan. 18, 2019) ..................................2

*Valeant Pharm. N. Am. LLC v. ECI Pharm. LLC*,
    No. 3:18-cv-00355 (N.D. Cal. Jan. 18, 2019), ECF No. 92.............................................2

*Williams v. Gerber Prod. Co.*,
    552 F.3d 934 (9th Cir. 2008) .........................................................................................12

**Statutes**

15 U.S.C. § 1125(a)(1)(B) ...................................................................................................5, 6

21 U.S.C. § 355(b), (j) ............................................................................................................3

## I.    ISSUES TO BE DECIDED

Whether the Court should deny Lannett Company, Inc.'s and Cody Laboratories, Inc.'s (collectively, "Lannett" or "Defendant") motion to dismiss Genus Lifesciences, Inc.'s ("Genus's") counts for false advertising and unfair competition under 15 U.S.C. § 1125(a), California False advertising under Cal. Bus. & Prof. Code § 17500, California Unfair Competition under Cal. Bus. & Prof. Code § 17200, and monopolization under 15 U.S.C. § 2. Lannett does not directly challenge Genus's count for contributory false advertising by Cody Laboratories, Inc.

## II.    INTRODUCTION

The Court should deny Lannett's motion to dismiss. There is no dispute that Lannett's cocaine hydrochloride 4% solution ("Cocaine Drug") is unapproved. Compl. ¶¶ 4, 6–8. There is no dispute that Lannett's sale of its Cocaine Drug is illegal. But Genus is not suing Lannett for illegally selling an unapproved drug. Genus is suing Lannett for *falsely marketing* its unapproved drug as if it was an FDA-approved or FDA-authorized drug. *Id.* ¶ 9.

Lannett does not and cannot dispute that falsely marketing its drug as FDA-approved or FDA-authorized violates the Lanham Act. Genus has outlined detailed allegations in its complaint, including:

- Lannett falsely markets its unapproved Cocaine Drug as approved by the U.S. Food and Drug Administration ("FDA"), both in its packaging and on its website. *Id.* ¶¶ 81–94.

- Lannett falsely markets its unapproved Cocaine Drug as an FDA-approved generic equivalent to Genus's Goprelto® product. *Id.* ¶¶ 73–80.

- Lannett falsely states that its unapproved Cocaine Drug is "grandfathered" under the Federal Food, Drug, and Cosmetic Act ("FDCA") to intentionally trick customers into believing that its drug is authorized by FDA. *Id.* ¶¶ 49–62.

- Lannett falsely states that its Cocaine Drug is marketed under a fictional "preliminary new drug application" to trick customers into believing that its cocaine drug is authorized by FDA. *Id.* ¶¶ 63–72.

- Lannett misleads and deceives wholesale distributors, GPOs, IDNs, price lists, pharmacists, patients and doctors as to the FDA approval status of its Cocaine Drug. *Id.* ¶¶ 95–100.

1

- Lannett falsely states that its unapproved Cocaine Drug is a "topical" product for oral, laryngeal, and nasal administration, and has created the false impression that its drug is superior to Genus's Goprelto®. *Id.* ¶¶ 107–114.

Notably, not once does Lannett deny the veracity of these allegations. Instead, Lannett insists that this Court is powerless to stop its misconduct because its false marketing is not covered by the Lanham Act. Lannett is mistaken.

Private parties like Genus can sue their competitors for false advertising of products regulated by FDA. *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 106 (2014). Since the Supreme Court's decision in *POM Wonderful*, courts across the country have uniformly rejected the arguments raised by defendants similar to Lannett who mislead customers with false and misleading advertising regarding an unapproved product. *See JHP Pharm., LLC v. Hospira, Inc.*, 52 F. Supp. 3d 992, 1002–03 (C.D. Cal. 2014) (denying motion to dismiss false advertising action based on false allegations of "FDA approval" of defendants' competing unapproved product); *Par Sterile Prods. LLC v. Fresenius Kabi USA LLC*, No. 14 C 3349, 2015 WL 1263041, at *4–5 (N.D. Ill. Mar. 17, 2015) (same); *Valeant Pharm. N. Am. LLC v. Belcher Pharm., LLC*, No. 17-cv-06731-RS, 2019 WL 266271, at *3–4 (N.D. Cal. Jan. 18, 2019); Order Denying Motion to Dismiss at 4–5, *Valeant Pharm. N. Am. LLC v. ECI Pharm. LLC*, No. 3:18-cv-00355 (N.D. Cal. Jan. 18, 2019), ECF No. 92 (Haycock Decl., Exhibit A)[1] (same); *Arbor Pharm., LLC v. ANI Pharm., Inc.*, No. 17-4910 (DWF/LIB), 2018 WL 3677923, at *4–5 (D. Minn. Aug. 2, 2018) (denying motion to dismiss claims).

Lannett's misconduct is also covered by, and in violation of, the Sherman Act. Lannett speculates that Genus is frustrated by FDA's inaction in stopping Lannett from manufacturing and selling an illegal unapproved drug.[2] The truth is that Genus is frustrated by Lannett's efforts to

---

[1]   *See* Declaration of Jason Haycock in Support of Genus's Opposition to Lannett's Motion to Dismiss ("Haycock Decl."). The exhibits included in this declaration are only to contradict statements made by Lannett in its Motion, and they are not included to support Genus's allegations in its Complaint.

[2]   According to Lannett, FDA has not taken any action to stop Lannett from illegally selling its Cocaine Drug. Dkt. No. 30 at 4. Before Genus's approval of its Goprelto® product, there were no FDA-approved cocaine drugs. Compl. ¶ 2. According to FDA's guidances, FDA takes enforcement action against unapproved drugs within one year after a legitimate company obtains FDA approval. Compl. ¶ 42; *see also* Compl. Ex. 6 at 6. Genus does not know why FDA has thus far allowed Lannett to continue selling its illegal Cocaine Drug past the one year grace period, which ended in December 2018. But that is a distinct issue from that raised by Genus in its Complaint. Genus only

illegally monopolize the market through a campaign of false advertising, and tricking customers into believing that Lannett is selling an FDA-approved and/or FDA-authorized drug product.

Lannett has manipulated the drug distribution system to avoid competing with Genus's product.  In particular, Lannett has misled third party price list companies like First Databank about the nature of Lannett's unapproved product to trick customers into believing its Cocaine Drug cannot be substituted by Genus's Goprelto® for routine medical procedures like nasal endoscopies.  Despite the entry of Genus's cocaine hydrochloride 4% solution, Lannett continues to charge supracompetitive prices by systematically excluding Genus from fairly competing.

Lannett's motion to dismiss should be denied because Genus has alleged much more than plausible facts demonstrating that Lannett has made literally false statements, that Lannett's false and misleading advertising has actually deceived a substantial segment of potential customers, and that Lannett has taken illegal action to maintain a monopoly.  Instead of addressing its misconduct, Lannett tries to raise factual challenges to Genus's allegations and misstates the law.  Genus respectfully requests the Court deny Lannett's motion to dismiss.

## III.   BACKGROUND

There is no dispute that Lannett's Cocaine Drug is unapproved.  Compl. ¶¶ 4, 6–8.  But Genus is not suing Lannett because Lannett sells an unapproved prescription drug.  Genus is suing Lannett because Lannett falsely markets its unapproved product as an FDA-approved and/or FDA-authorized drug.  *Id.* ¶ 9.

### A.   Unapproved Cocaine Hydrochloride Drugs

Lannett's Cocaine Drug is different from an FDA-approved drug or FDA-authorized drug. *Approved drugs* include branded drugs which have FDA-approved New Drug Applications ("NDAs") and generic versions of approved drugs, which have FDA-approved Abbreviated New Drug Applications ("ANDAs").  21 U.S.C. § 355(b), (j).  *FDA-authorized drugs* include certain unapproved drugs, for example, pre-1938 and pre-1962 "grandfathered" drugs that are exempt from

---

complains about Lannett's rampant false advertising.  Whether and when FDA takes enforcement action against Lannett is similar to a prosecutor's discretion on whether and when to prosecute criminal drug trafficking: If the prosecutor does not, the criminal activity continues.  That does not mean, however, that the Government authorized Lannett to falsely advertise its Cocaine Drug.

any FDA approval, review, regulation, or oversight.  Compl. ¶¶ 36–39.  Unapproved drugs also include *drugs that are illegally marketed drugs without grandfathered status* like Lannett's Cocaine Drug. *Id.* ¶ 36.  Lannett specifically asked FDA whether it may sell its Cocaine Drug without FDA approval as a "grandfathered" drug, and FDA said no.  *Id*. ¶¶ 56–60.  Lannett may not legally market its drug as "grandfathered," and Lannett's drug is not exempt from the approval requirements.  *Id.*

The difference between approved and unapproved drugs is enormous: Whereas approved drugs are subject to a rigorous FDA review and approval process to ensure that the product meets stringent specifications, *unapproved drugs—like Lannett's Cocaine Drug—are not submitted to or reviewed by FDA*. *Id.* ¶ 43.  For approved drugs, FDA preapproves drug and promotional labels and regulates advertisements.  *Id.* ¶ 44.  Because Lannett's Cocaine Drug is unapproved, the labels, packaging, and advertising for it have never been evaluated or reviewed by FDA.[3]

**B.**     **Genus's FDA-Approved Goprelto®**

Safety concerns for unregulated, unapproved drugs prompted FDA to create a program called the "Prescription Drug Wrap-Up" to identify the universe of unapproved drugs.  *Id*. ¶ 40.  In 2006, FDA identified approximately 5,150 unapproved, marketed prescription drug products.  *Id*. ¶ 40.  At that time, FDA encouraged drug manufacturers like Genus and Lannett to seek NDA approval on otherwise unapproved marketed prescription drugs being sold in the United States.  *Id.* ¶ 42.  Whereas Lannett snubbed FDA's guidance and launched its unapproved Cocaine Drug in 2008 (*id*. ¶ 47), Genus heeded FDA's guidance, sought FDA approval, and obtained approval for Goprelto® on December 14, 2017 (*id*. ¶ 2).

Genus's Goprelto® is the first and only FDA-approved cocaine drug product.  *Id*. ¶¶ 2, 35.  When applied intranasally to the mucous membrane, cocaine is a strong local anesthetic.  It is preferred by otolaryngologists ("ENTs") performing nasal procedures because it simultaneously constricts blood vessels (i.e., "vasoconstriction"), limiting swelling and blood loss.  *See id*. ¶¶ 3, 128.

---

[3]  Lannett's statement that it has filed an NDA for approval has no bearing on any of Genus's claims against Lannett—Lannett is still marketing its unapproved Cocaine Drug and has been marketing the unapproved drug since 2008.  Dkt. No. 30 at 4; Compl. ¶ 47.  Moreover, the issues raised in Genus's Citizen Petition against Lannett's recent application for approval of an NDA are not relevant to any of the claims in the current case.

Despite the fact that pharmacists universally prefer FDA-approved products over unapproved versions of pharmaceutically equivalent products (*see id.* ¶ 102), pharmacists were not purchasing Genus's FDA-approved Goprelto®.   Upon investigation, Genus discovered that Lannett falsely advertised its unapproved Cocaine Drug in various ways, including marketing it as an FDA-approved drug, as an FDA-authorized "grandfathered" product, and as a "topical" solution that is superior to Genus's product.  *See id.* ¶¶ 49–62; 107–114.  As a direct result of Lannett's misleading statements about its product and its efforts to monopolize the market, Lannett was able to maintain 99% of the entire Cocaine Drug market through its false and misleading advertising.  *Id.* ¶ 125.[4]

## IV.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003).  When deciding a motion to dismiss, the Court is obligated to "assume that the plaintiff's allegations are true and must draw all reasonable inferences in his or her favor."  *In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1060 (N.D. Cal. 2015) (citing *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)); *see also Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899–900 (9th Cir. 2007).  Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

### A.   False Advertising

Section 43(a)(1)(B) of the Lanham Act permits a suit against anyone who "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of

---

[4] Contrary to Lannett's assertion, Genus has attempted to market its product outside of "listing it on First Databank." Dkt. No. 30 at 5 n.3.  Genus's efforts to market its product face an uphill battle because Lannett has falsely advertised its unapproved Cocaine Drug for an entire decade.

his or her or another person's goods, services, or commercial activities."  15 U.S.C. § 1125(a)(1)(B).

To state a claim under this section, plaintiffs must allege:

> (1)   a false statement of fact by the defendant in a commercial advertisement about its own or another's product;
> (2)   the statement actually deceived or has the tendency to deceive a substantial segment of its audience;
> (3)   the deception is material, in that it is likely to influence the purchasing decision;
> (4)   the defendant caused its false statement to enter interstate commerce; and
> (5)   the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Skydive Ariz., Inc. v. Quattrocchi*, 673 F. 3d 1105, 1110–11 (9th Cir. 2012).

## B.   Antitrust Violations

Section 2 of the Sherman Act contains three elements: (1) possession of monopoly power in the relevant market; (2) willful acquisition or maintenance of that power; and (3) the defendant's conduct caused antitrust injury.  *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 998 (9th Cir. 2010).  To establish the second element, a plaintiff must show that the defendant maintained its monopoly power through improper exclusionary conduct.  *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1130 (9th Cir. 2004).  While courts have not precisely defined exclusionary behavior, it is conduct other than on the merits that "has impaired competition in an unnecessarily restrictive way."  *Catch Curve, Inc. v. Venali Inc.*, 519 F. Supp. 2d 1028, 1036 (C.D. Cal. 2007) (quoting *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605 (1985)).

## V.   ARGUMENT

For years, Lannett has misled its customers and continues its campaign to deceive customers in the hope of maintaining its monopoly over the cocaine drug market.  Lannett employs various tactics.  Lannett markets its Cocaine Drug to look exactly like an FDA-approved drug while advertising to customers that it complies with all FDA rules.  Compl. ¶¶ 81–94.  Lannett markets its Cocaine Drug as if it is an FDA-approved "generic" drug; i.e., the same as, or equivalent to, Genus's FDA-approved Goprelto® product.  *Id*. ¶¶ 73–80.  Lannett falsely markets its Cocaine Drug as FDA-authorized by falsely claiming that the product is "grandfathered."  *Id*. ¶¶ 49–62.  Lannett also tricks consumers by suggesting its Cocaine Drug is FDA-authorized as by virtue of a "preliminary new

6

1  drug application." *Id.* ¶¶ 63–72.  Lannett misleads buyers and distributors of its Cocaine Drug,

2  including wholesale distributors, GPOs, IDNs, price lists, pharmacists, patients, and doctors.  *Id.* ¶¶

3  95–100.  Lannett has deceived customers into believing that its unapproved Cocaine Drug product is

4  superior to Genus's FDA-approved Goprelto® by mislabeling its product as "topical" for use orally,

5  laryngeally, and nasally.  *Id.* ¶¶ 107–114.  And Lannett has engaged in anticompetitive conduct to

6  maintain a monopoly over the cocaine hydrochloride market.  *Id.* ¶¶ 124–149.

7  Each allegation individually supports a claim.  Lannett does not even dispute many of the

8  allegations, including the literal falsity and materiality of its statements.  At the same time, Lannett

9  incorrectly insists that the law permits it to falsely advertise its product and keep its monopoly.

10  Contrary to Lannett's strained attempt to characterize Genus's claims as requiring FDA expertise,

11  none of Genus's claims fall within the purview of FDA, and may be evaluated by this Court.  *See,*

12  *e.g.*, *JHP Pharm.*, 52 F. Supp. 35 at 1003 ("Lanham Act claims that its competitors are falsely

13  representing their products as having been FDA-approved are neither precluded by the FDCA nor

14  within the primary jurisdiction of the FDA.").

15  **A.**    **Lannett's Intentional Failure and Concealment of the Unapproved Status of its**
   **Cocaine Drug to Mislead Consumers Is Actionable under the Lanham Act**

16

17  Lannett's lead argument in its motion to dismiss is a classic strawman.  First, Lannett falsely

18  suggests that Genus contends that Lannett's mere sale of its unapproved Cocaine Drug is actionable

19  under the Lanham Act (which Genus does not contend); and second, Lannett recites the trivial legal

20  proposition that the "mere act of selling an unapproved product is not actionable under the Lanham

21  Act."  Dkt. No. 30 at 6:20-21.  The fact that Lannett sells an unapproved Cocaine Drug is not the

22  problem.  The problem is Lannett's pattern of misleading advertising designed to trick customers

23  into believing its product is FDA-approved, FDA-authorized, and even superior to Genus's product.

24  Lannett also incorrectly contends that the Lanham Act allows Lannett to make misleading

25  statements about its Cocaine Drug, so long as Lannett does not make affirmative, literally false

26  statements about its product.  *Id.* at 6–7 (citing the pre-*POM Wonderful* case of *Mylan Labs., Inc. v.*

27

28

*Matakari*, 7 F.3d 1130, 1139 (4th Cir. 1993)).[5]   False advertising may be based on either (1) a statement or representation of fact in advertising that is literally false, or (2) statements or misrepresentations that, although not literally false, mislead, confuse, or deceive the consuming public.  *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139–40 (9th Cir. 1997); *TrafficSchool.com, Inc. v. Edriver, Inc.*, 653 F.3d 820, 828 (9th Cir. 2011).   Lannett invites error when it insists that misleading statements that are ambiguous or literally true cannot constitute a Lanham Act violation.  Lannett's argument has already been rejected by other courts.

For example, in a similar case from 2015, Par Sterile Products LLC ("Par") sued Fresenius Kabi USA LLC ("Fresenius") for its false advertising of an unapproved vasopressin product, and the district court denied Fresenius's motion to dismiss Lanham Act claims that it marketed its unapproved product as FDA approved.  *Par Sterile Prods.*, 2015 WL 1263041, at *5.  Fresenius relied on the outdated *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1139 (4th Cir. 1993)) case (just like Lannett here) and argued that the mere implication, rather than an explicit statement, regarding FDA-approval status of an unapproved drug is insufficient to state a claim (just like Lannett here).   *Par Sterile Prods.*, 2015 WL 1263041, at *5.   The district court rejected this argument: "The Court rejects Fresenius's contention that Par must allege that Fresenius explicitly stated that its Vasopressin Injection was FDA–approved."  *Id.*

Peddlers of unapproved drugs can violate the Lanham Act by misrepresenting their products as FDA-approved "by offering it for sale in certain marketing channels alongside FDA-approved generic drugs."  *Id.* at *4.  Lannett's packaging an unapproved product to look indistinguishable from a prescription approved product to a customer who otherwise assumes all prescription products

---

[5]   Contrary to Lannett's statement (Dkt. No. 30 at 7 n.4), courts have recognized the limited holding of *Mylan Labs* since the 2014 decision in *POM Wonderful*.  *See, e.g.*, *Par Sterile Prods.*, 2015 WL 1263041, at*4–5.  Although courts have acknowledged that "*Mylan Laboratories* and its progeny are frequently cited for the proposition . . . that the mere act of placing a pharmaceutical product on the market, without more, cannot support a Lanham Act claim," courts have expressly allowed Lanham Act claims involving a defendant representing that its product is FDA-approved.  *Id.* at *5; *see also JHP Pharm.*, 52 F. Supp. 3d at 1001–02 ("it takes no special expertise to determine whether the FDA has granted approval or not. . . . The same thing is true of the term 'generic'."); *Belcher Pharm., LLC v. Hospira, Inc.*, No. 8:17-cv-2353-T-30JSS, 2018 WL 4643292, at *6 (M.D. Fla. Apr. 9, 2018) ("This allegedly misleading representation of FDA approval is an issue the Court can evaluate under the Lanham Act." (citation omitted)).

are FDA-approved is actionable.   Compl. ¶¶ 81–94.   Marketing an unapproved product in a wholesaler database or price list as a "generic" is actionable.   *Id.* ¶¶ 95–100.

As alleged in Genus's Complaint, pharmacists erroneously presume that all prescription drugs are FDA-approved.   *Id.* ¶ 102 ("a nationwide survey of 500 pharmacists found that 91% thought all products pharmacists dispense are FDA approved.").   Against that backdrop, Lannett's silence regarding the unapproved status of its Cocaine Drug screams the opposite: Customers presume Lannett's Cocaine Drug is FDA-approved.   Knowing that its customers believe its Cocaine Drug is FDA-approved, Lannett can sit back, and remain deceptively silent.   *See, e.g.*, *U-Haul Int'l, Inc. v. Jartran, Inc.*, 522 F. Supp. 1238, 1247 (D. Ariz. 1981), *aff'd* 681 F.2d 1159 (9th Cir. 1982) ("A statement actionable under the Lanham Act may be an affirmatively misleading statement, a partially incorrect statement, or a statement which is untrue as a result of a failure to disclose a material fact." (citation omitted)); *Bohsei Enters. Co., U.S.A. v. Porteous Fastener Co.*, 441 F. Supp. 162, 165 (C.D. Cal. 1977) ("Here the false representation plaintiff cites as unfair competition is not that defendant's product is plaintiff's rose by another name but rather that defendant's products are by the omission of the country of origin giving an aura of quality that consumers attribute to domestic as opposed to foreign goods.").   Of course, Lannett could always tell its customers the truth, i.e., that FDA has already concluded Lannett has no legal basis to market its Cocaine Drug. But Lannett refuses to tell the truth because the unapproved and illegal status of its Cocaine Drug is material to its customers' decision-making, and Lannett knows that telling its customers the truth would undermine its long held monopoly in the market.[6]

**B.    The Specific Examples of Lannett's False and Misleading Statements in Genus's Complaint Demonstrate False Advertising, and Certainly Plead Facts Sufficient to Allow the Court to Draw the Reasonable Inference that Lannett Is Liable for the Misconduct Alleged**

1.    Lannett Advertises Its C-Topical as "Grandfathered," Which Is Literally False

Genus pleaded that "Lannett intentionally misled, and continues to mislead, *customers* as to the legality and 'grandfather' status of C-Topical, falsely suggesting and implying that it is FDA

---

[6]   Lannett falsely states that Genus's Complaint did not identify any affirmative false statements by Lannett.   Dkt. No. 30 at 2:1-3, 8.   Genus presented a number affirmative misleading statements regarding the FDA-approval or FDA-authorization of Lannett's Cocaine Drug, including, for example, the allegation that Lannett falsely stated that its product as "the generic pharmaceutical C-Topical® Solution CII."   Compl. ¶¶ 73–80.

9

lawfully marketed in the United States, including in California, even though it is not." Compl. ¶ 62 (emphasis added); *see generally* ¶¶ 49–62. As support for this allegation, Genus provided five examples of this false statement either certified by or coming directly from Lannett's Chief Executive Officer ("CEO") in 2018 alone. *Id*. ¶¶ 50–54. Genus has every reason to believe that the false statement was actually made to Genus's customers (as well as investors), and Lannett's sales teams follow the example of their CEO.

Lannett does not deny referring to its Cocaine Drug as "grandfathered." Lannett also does not deny this statement is literally false. Lannett does not even deny the materiality of this statement in influencing purchasers, or the fact that it has directly injured Genus. Instead, Lannett argues that lying to Lannett's investors is different from lying to its customers. Dkt. No. 30 at 10. In particular, Lannett insists its false statements in its earnings calls and SEC filings[7] were directed only to investors. *Id.* at 10:12–22. Lannett mischaracterizes Genus's complaint.

Genus specifically alleged that Lannett makes this statement to *customers* (Compl. ¶ 62), and Genus alleged that Lannett employs and directs a sales team that promotes and sells its Cocaine Drug based on false advertising (*id*. ¶¶ 19, 110). Furthermore, these statements are publicly available on Lannett's website. Even if Lannett initially targeted investors in these specific examples, Lannett subsequently advertised the false statement to customers through its website. *Sigma Dynamics, Inc.*, 2004 WL 264837, at *3 (explaining that statements on websites *do* satisfy the commercial speech requirement under the Lanham Act).

At this stage of the proceeding, Genus need not prove its case; it only needs to establish plausibility in light of the complaint *as a whole*. *See, e.g.*, *Brown v. Collections Bureau of Am., Ltd.*, 183 F. Supp. 3d 1004, 1006–07 (N.D. Cal. 2016) (reading the complaint "as a whole" established a

---

[7] None of the three cases cited by Lannett directly address 10-K or 10-Q filing statements. *See RPost Holdings, Inc. v. Trustifi Corp.*, No. 10-cv-1416-PSG, 2012 WL 12952728, at *6–7 (C.D. Cal. May 11, 2012) (addressing on summary judgment statements "made in materials provided to potential investors," but not SEC filings); *Tercica, Inc. v. Insmed Inc.*, No. 05-cv-5027-SBA, 2006 WL 1626930, at *18 (N.D. Cal. June 9, 2006) (dismissing the case on jurisdictional grounds, also addressing various statements made on investor conference calls, but not addressing SEC filings); *Sigma Dynamics, Inc. v. E. Piphany, Inc.*, No. 04-cv-0569-MJJ, 2004 WL 2648370, at *3 (N.D. Cal. June 25, 2004) (addressing "[s]tatements made during an earnings conference call primarily to influence investors," but not SEC filings).

plausible claim to relief); *Evans v. Gilmore*, No. 15-cv-01772-MEJ, 2015 WL 4463747, *9 (N.D. Cal. July 21, 2015) (able to draw a "reasonable inference that the defendant was liable for misconduct" when reading the complaint as a whole).

Lannett also mistakenly contends that customers could not be deceived by Lannett's marketing of its Cocaine Drug as "grandfathered," because Lannett also calls it an "unapproved grandfathered" drug product. Dkt. No. 30 at 10–11. Lannett's counsel[8] completely misses the point that falsely referring to its drug as "grandfathered" are not instances in which Lannett is falsely marketing its drug as *FDA-approved*; these are instances where Lannett is falsely stating that it can *legally market its Cocaine Drug without obtaining any drug approval*. By calling its product an "unapproved grandfathered drug," Lannett falsely states that its Cocaine Drug is exempt from the approval requirements. *See* Compl. ¶ 68. As explained in Genus's complaint, FDA already determined in 2015 that Lannett's product is not exempt from new drug requirements. *Id.* ¶¶ 58–60. It is not legally marketed. And it is not "grandfathered." Lannett's statements are literally false.

2.   Lannett and Cody Falsely Advertise C-Topical as a Legally Marketed "Preliminary New Drug Application"

"By advertising that Lannett is producing and marketing C-Topical under a 'preliminary new drug application,' Lannett actively and intentionally misleads consumers into believing that it has FDA authorization to produce and market C-Topical." *Id.* ¶ 71. Lannett fabricated a fictitious regulatory category to trick customers into believing that its Cocaine Drug is legally marketed. *Id.* ¶ 70; *see generally id.* ¶¶ 63–72. Again, Lannett does not deny that this statement is false, misleading, deceptive, and material. Instead, Lannett insists that it was only trying to trick its investors, and not its customers. Evidence showing that its CEO publicly lies about the legal status of its Cocaine Drug plausibly supports Genus's contention that Lannett falsely advertises it to customers. And like Lannett's false advertising as to the "grandfather" status of its Cocaine Drug, Lannett mistakenly conflates FDA-approval with FDA-authorization. In this case, Lannett deceived its customers by suggesting that it may legally market its Cocaine Drug, even though FDA has concluded Lannett cannot legally market its drug. *Id.* ¶ 60 (citing Compl. Ex. 15).

---

[8] Genus does not think Lannett misses the point because Lannett intentionally states this to mislead.

3.   Lannett Falsely Advertises Its C-Topical as a "Generic Pharmaceutical C-Topical® Solution CII"

Genus pleaded that "Lannett falsely advertises its C-Topical as 'Generic Pharmaceutical C-Topical® Solution CII' to deceive customers into believing that its product is approved by FDA." *Id*. ¶¶ 73–80.  Lannett includes this meta-description for its product webpage to trick search engines and customers alike.  *Id.* ¶ 76.  Lannett's statement that its product is "generic" intentionally misleads customers as to FDA approval status of C-Topical, falsely implying that it is a generic drug product under an approved ANDA.  *See id.* ¶ 35; *see JHP Pharm.*, 52 F. Supp. 3d at 1002.  Lannett does not dispute that its product is not "generic" to Genus's Goprelto® or that it refers to its Cocaine Drug as "generic pharmaceutical" in a meta-description.

Lannett's only defense for its false statement is that a subsequent webpage ultimately tells the truth if a customer clicks through all the available links.  First, the fact that a customer could eventually determine the truth about a misleading statement through his or her own research does not negate the misleading statement for the purposes of a Lanham Act violation.  *See, e.g.*, *Bayer Healthcare Pharm. Inc. v. RJ Health Sys. Int'l LLC*, No., 15-6952 (KM) (MAH), 2016 WL 3574325, at *2–3 (D.N.J. June 30, 2016) ("The contention that a human, by clicking around, can get to the proper information begs the question of whether the proper information is uploaded to the customer. . . . Factual questions like this are more appropriately addressed with the benefit of discovery."); *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938–39 (9th Cir. 2008) ("[R]easonable consumers should [not] be expected to look beyond misleading representations").

Second, although Lannett argues that the false statement in "meta-descriptions must be read in the context of the content of the 'landing page' associated with the meta description. . . ." (Dkt. No. 30 at 13:3-9), Lannett *falsely identifies the "landing page*."[9]  Lannett states that "the landing

---

[9] The complete quotation from *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, cited by Lannett, explains that "Outside the special case of trademark.com or domains that actively claim affiliation with the trademark holder, consumers don't form any firm expectations about the sponsorship of a website until they've seen the landing page—if then."  610 F.3d 1171, 1179 (9th Cir. 2010); *see also Novation Ventures, LLC v. J.G. Wentworth Co.*, No. 15-cv-954-BRO (C.D. Cal. Sept. 21, 2015) (relying on *Toyota Motor Sales*).  This is one of those "special cases" as the meta description identifies both the trademark holder (Lannett) and also the product: www.lannett.com/product/c-topical-solution-cii.  Compl. ¶ 75; Compl. Ex. 18.

12

page associated with the meta-description explicitly states that C-Topical has not been approved by the FDA." *Id.* (emphasis omitted).  This is demonstrably false.  The landing page for the Google search result is https://www.lannett.com/_product/c-topical-solution-cii/, which nowhere states that C-Topical is unapproved or unauthorized by FDA.  *See* Haycock Decl., Exhibit B.

To mislead this Court, Lannett focuses on an entirely separate website several clicks from the Google search result and the landing page.  On the actual product landing page, Lannett provides a link to a "package insert," which links to yet another website showing a version of the Cocaine Drug's package insert from the U.S. National Library of Medicine (www.dailymed.gov).  The exhibit that Lannett attached as Exhibit C to the Cavanaugh Declaration and mispresented as the "landing page" is not the landing page; it is from DailyMed.  *See* Dkt. No. 30-1.[10]  Even worse, the disclaimer that its product "has not been approved" was *not even created or maintained by Lannett*.  Lannett's own drug label that it includes in actual packages of its Cocaine Drug and distributed to customers does not contain this disclaimer.  *See* Compl. ¶ 84; Compl. Ex. 8.  Instead, the disclaimer only appears on a *version of the label created* by the U.S. National Library of Medicine.  Although Lannett suggests that it is honest because it includes a downstream link to the truth on www.lannett.com, Lannett maintains a second website marketing its C-Topical, www.cocainehlc.com, that contains no such link and nowhere mentions the unapproved status of its drug.  *See* Compl. Ex. 23.[11]  Not only is Lannett misleading its customers, it misleads this Court.

4.    Lannett and Cody Package and Advertise Their C-Topical to Mislead Consumers into Falsely Believing C-Topical Is FDA-Approved

Genus pleaded that Lannett packages its Cocaine Drug to look as if it is an FDA-approved drug, which is false and misleading.  Compl. ¶¶ 81–94.  By making its Cocaine Drug look exactly like an FDA-approved drug, Lannett misled customers (such as pharmacists) into falsely believing that its Cocaine Drug is FDA-approved, or at least, authorized by FDA.  As alleged by Genus in its Complaint, this issue involves the bottle label, the box, and package insert.  *Id.*

---

[10] DailyMed reformats drug labels and notes "[t]he drug labeling on this Web site may not be the labeling on currently distributed products. . . ."  *See* ABOUT DAILYMED, https://dailymed.nlm.nih.gov/dailymed/about-dailymed.cfm (last visited Mar. 4, 2019).

[11] Lannett even falsely suggests that its arguments apply with "equal force" the www.cocainehcl.com website.  Dkt. No. 30 at 14 n.8.

OPPOSITION TO LANNETT'S MOTION TO DISMISS; CASE NO. 18-CV-07603

Lannett responds by falsely asserting that Genus "complains that Lannett's labeling and packaging provide too much information about C-Topical . . . ." Dkt. No. 30 at 14.  That clearly is not Genus's complaint.  Genus alleges that the form and content of C-Topical's label is misleading because it is designed to look identical to an FDA-approved product.  *See* Compl. ¶ 82.   A customer looking at Lannett's Cocaine Drug would never be able to determine the unapproved status of it because the packaging, the package insert, and the label are designed to deceive customers.  *Id*. ¶¶ 82–84.  *See Merck Eprova AG v. Brookstone Pharm., LLC*, 920 F. Supp. 2d 404, 423 (S.D.N.Y. 2013) (finding labels and package insert of defendant's folate products to be impliedly false in violation of the Lanham Act); *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 253–54, 267 (2d Cir. 2014) (affirming the district court's finding of literal falsity for statements made in product specification sheets, brochures, certificates of analysis, and material safety data sheets).

Lannett's packaging tactic is particularly misleading because that Lannett holds itself out as a company that complies with FDA requirements.  Genus pleaded that statements on Lannett's and Cody's websites regarding compliance with regulatory requirements mislead customers into believing C-Topical is FDA-approved or FDA-authorized.  Compl. ¶¶ 89–93.  For example, Lannett's website describes Lannett as a "generic pharmaceuticals manufacturer" and states "its leadership is committed to quality, *adherence to FDA standards, and compliance with regulatory requirements to ensure patient safety*."  *Id.* ¶¶ 91, 89 (emphasis in original) (citation omitted). Cody's website states that it "is committed to compliance with . . . Federal requirements and regulations governing [its] business, especially FDA, . . . ."  *See id*. ¶¶ 92–93.

Lannett does not deny the falsity of statements on www.lannett.com with respect to its Cocaine Drug.  Instead, Lannett argues the statements are not "associated with, or made in reference to, C-Topical" and repeats its earlier error that the landing page states C-Topical "is ***not*** approved by the FDA."  Dkt. No. 30 at 13 (emphasis in original).  This argument fails because the statements refer to Lannett as a whole and provide no carve-out for C-Topical.  Furthermore, the C-Topical page does not notify customers that its Cocaine Drug is neither FDA-approved nor FDA-authorized. Compl. Ex. 23.  Lannett also does not deny the falsity of statements on www.codylabs.com with respect to Cocaine Hydrochloride; instead Lannett factually challenges whether the false statements

14

actually influence customers.  Dkt. No. 30 at 16.  At this stage of the proceeding, Genus need not prove its case.  Moreover, it is more than plausible that a consumer would identify Cody as the manufacturer of the Cocaine Drug (Compl. ¶ 82), would visit Cody's website, and would be misled by Cody's statements that it is "committed to compliance with all Local, State, and Federal requirements and regulations governing [its] business, especially FDA, DEA, . . ." and that its "active pharmaceutical ingredients are used in *FDA approved commercial drug products*" (*see id.* ¶¶ 92–93).

Whereas Lannett affirmatively declares that its products comply with the law, in this case, Lannett cannot call its Cocaine Drug a "legal" drug product because Lannett obtained a statement from FDA that its marketing of its Cocaine Drug is not legal.  *Id.* ¶¶ 55–61.  Although the legality or illegality of marketing a drug is typically within the purview of FDA, if a plaintiff "obtain[s] a clear statement from the agency [i.e., FDA] that the Defendants [e.g., Lannett and Cody] are selling their products illegally or otherwise breaking the law, and if the Defendants [Lannett and Cody] at that point chose to affirmatively declare in their advertising that their products comply with the law, a federal court could hear a Lanham Act claim for false advertising."  *JHP Pharm.*, 52 F. Supp. 3d at 1004.  Lannett's case is atypical because FDA specifically told Lannett its drug cannot be legally marketed (Compl. ¶¶ 56–60), and thus, Lannett's statements, suggestions, and implications that it is legal are false and misleading.

5.     <u>Lannett Misleads and Deceives Wholesale Distributors, GPOs, IDNs, Price Lists, Pharmacists, Patients, and Doctors as to the Unapproved FDA Status of the C-Topical</u>

Genus pleaded that Lannett misleads buyers and distributors of its Cocaine Drug, including wholesale distributors, GPOs, IDNs, price lists, pharmacists, patients, and doctors.  *Id*. ¶¶ 95–100. In response, Lannett incorrectly states that Genus "does not allege any facts demonstrating that information provided to wholesalers . . . is misleading."  Dkt. No. 30 at 11.  That is untrue.  Genus specifically alleged that "on information and belief, McKesson Corporation ("McKesson") reports Genus's FDA-approved Goprelto® product and Lannett's unapproved C-Topical using descriptions that do not indicate FDA approval status."  Compl. ¶ 99.  For example, McKesson (a large wholesale distributor) affirmatively categorizes Lannett's Cocaine Drug as "generic"—which is literally false.

*See* Haycock Decl., Exhibit C.  Lannett also reiterates its strawman argument that it is allowed to deceive customers so long as it makes no affirmative false statement, relying again on its misinterpretation of the abrogated *Mylan* case.  *See above* Section V.A.

Lannett states that price list companies like First Databank and MediSpan accurately depict the unapproved status of Lannett's Cocaine Drug.  Dkt. No. 30 at 12.  This is also untrue.  First, the very price list pages proffered by Lannett contain false and misleading information, including the claim that the Cocaine Drug has a "topical" route of administration.  Dkt. No. 31-1 at 4.  *See below* Section V.B.6.  Second, database information can be displayed showing only select data fields; not every field.  Thus, even if the unapproved status of Lannett's Cocaine Drug is buried, it does not always make its way to customers.  *See, e.g.*, Haycock Decl., Exhibit C (page does not identify the Cocaine Drug as "unapproved").  Lannett's ability to find a few semi-accurate descriptions of its product does not excuse years of rampant false advertising that continues today.

### 6.   Lannett Falsely Advertises Its Routes of Administration and Uses

Genus pleaded that Lannett falsely advertised its unapproved drug as a "topical"—where FDA reserves this classification for drug products applied to the outer surface of the skin.  Compl. ¶¶ 105–114.  Indeed, according to FDA's Data Standards Manual for Route of Administration, a "topical" route is "[a]dministration to a particular spot on the outer surface of the body" and Lannett's Cocaine Drug is not administered to "the outer surface of the body."  *Id.* ¶¶ 107–09.  The falsity of Lannett's advertising its product as "topical" is self-evident from Lannett's label itself, which states the Cocaine Drug is "indicated for the introduction of local (topical) anesthesia of *accessible mucous membranes* of the oral, laryngeal and nasal *cavities*."  *Id.* ¶ 107.  Mucous membranes are not the outer surface of the skin.  Lannett's misrepresentation harms Genus because customers believe Lannett's product is a different and superior product to Genus's Goprelto®.  *See* ¶¶ 112–113.  Evidence will show some customers actually believe Lannett's unapproved and unauthorized drug is better than Genus's.

In response, Lannett suggests that Genus cannot complain about Lannett's homemade label, and cites a line of distinguishable cases.  Dkt. No. 30 at 16 (citing *Par Sterile Prods.* and *JHP*

*Pharm.*).[12]   In those cases, the plaintiff pleaded that the defendant's drug label falsely implied that the defendant's unapproved drug is safe and effective.   Genus, however, does not plead or argue that Lannett's label is false for suggesting that the Cocaine Drug is safe and effective.   Lannett's label is false for calling the Cocaine Drug "topical," when it is undisputed that Lannett's product is not "topical."   Although it may be within FDA's purview to determine the *safety and efficacy* of drug products that seek formal approval, "it takes no special expertise to determine whether" Lannett's labeling and advertising of its Cocaine Drug as "topical" is true or false.   *JHP Pharm.*, 52 F. Supp. 3d at 1001.

C.   **Genus's Allegations of Monopoly Demonstrate a Classic Case of Anticompetitive Conduct by Lannett**

Lannett improperly manipulated the system by which pharmaceutical products are identified and purchased by customers in order to avoid competing with Genus on the basis of price.   Realizing that competitors would seek to enter the market, Lannett devised and implemented a scheme to avoid competition and maintain its monopoly.   This lawsuit is not about Genus's "desire to avoid competition."   Dkt. No. 30 at 1.   This lawsuit is about Lannett unlawfully preventing Genus from competing.

Genus's Complaint sets forth a very specific set of factual allegations describing Lannett's scheme in detail.   Genus entered the market with a competing drug that contains the same active ingredient, the same strength, the same dosage, and is commercially similar in all ways but one: Whereas Lannett's Cocaine Drug is unapproved, Genus's Goprelto® is FDA-approved.   Compl. ¶ 127.   Despite this, Lannett has found a way to exclude Genus from fairly competing, thereby enabling Lannett to continue reaping anticompetitive monopoly profits.

Lannett manipulated First Databank into improperly issuing a unique CFI code to its Cocaine Drug so that no competing products would appear when healthcare providers searched for the drug. *Id.* ¶¶ 143–44.   Because it lacked FDA approval, Lannett could describe its route of administration

---

[12]   *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500 (7th Cir. 2006) is also distinguishable because Genus has done more than "intone literal falsity."   As stated above, Lannett's label is literally false for using the term "topical," despite describing administration to the "mucous membranes" not the outer surface of the skin.

1  as "topical" despite not being a topical drug.  *Id.* ¶¶ 140–41.  Based on this false description, Lannett

2  instructed First Databank to call its drug a "topical" product rather than a "nasal" product, resulting

3  in a unique CFI code which avoided comparison to any alternative product offerings.

4       A review of the Complaint confirms that Genus establishes the three elements of a Section 2

5  claim.  Lannett does not dispute that Genus satisfied the first and third elements.  Genus alleged facts

6  that the relevant market is the nationwide market for cocaine hydrochloride.  *See, e.g.*, Compl. ¶¶

7  126–28, 132–34.  Genus alleged that Lannett enjoys a monopoly in the market for cocaine

8  hydrochloride.  *Id.* ¶¶ 125, 129–32, 145.  Further, Genus alleged antitrust injury.  In particular,

9  Lannett charges a higher price than it would be able to charge in a competitive market which results

10  in consumers paying monopoly prices for an unregulated, unapproved drug.  *See id.* ¶¶ 148–49.  In a

11  properly functioning competitive market, an unapproved drug such as Lannett's Cocaine Drug

12  would need to lower its price in order to compete with the FDA-approved version.  Additionally,

13  Genus suffers injury in the form of lost profits.  *See id.* ¶ 149.

14       Lannett's sole objection is that Genus has not properly alleged exclusionary conduct.

15  Conduct is exclusionary if it "harm[s] the competitive process and thereby harm[s] consumers."

16  *United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001).  The Ninth Circuit has explained

17  that "[a]nticompetitive conduct is behavior that tends to impair the opportunities of rivals and either

18  does not further the competition on the merits or does so in an unnecessarily restrictive way."

19  *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 894 (9th Cir. 2008).  Exclusionary conduct

20  entails market power that is gained through behavior that curtails free competition, as opposed to

21  "power gained 'from growth or development as a consequence of a superior product, business

22  acumen, or historic accident.'"  *Image Technical Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195,

23  1208 (9th Cir. 1997) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966)).

24  "Anticompetitive conduct may even include otherwise *legal* conduct."  *Free FreeHand Corp. v.

25  Adobe Sys., Inc.*, 852 F. Supp. 2d 1171, 1180 (N.D. Cal. 2012) (quoting *Tele Atlas N.V. v. NAVTEQ

26  Corp.*, No. 05-CV-1673, 2008 WL 4911230, at *1 (N.D. Cal. Nov. 13, 2008) (emphasis in original)

27  (internal quotations omitted)).

28

In evaluating allegations of exclusionary conduct, courts must look at the entire body of the defendant's actions and should consider the impact not just on a particular competitor but on consumers as well.  *See Catch Curve*, 519 F. Supp. 2d at 1036 (internal citations and quotations omitted); *see also City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373, 1376 (9th Cir. 1992) (instructing courts to not "focus on specific individual acts of an accused monopolist while refusing to consider their overall combined effect").

Genus alleges extensive facts establishing that Lannett engaged in improper exclusionary conduct that prohibited competition on the merits.  Specifically, Genus alleges Lannett has falsely advertised, falsely characterized its product's route of administration as "topical," manipulated First Databank into assigning a unique CFI code, restricted access to true and complete information about available products, and deceived consumers into believing that no competing products exist; all of which enable Lannett to continue charging supracompetitive prices.  *See, e.g.*, Compl. ¶¶ 19, 46, 99 107–108, 140–141, 143, 148.

> 1.   Lannett Engages in Exclusionary Conduct By Falsely Characterizing Its Cocaine Drug's Route of Administration and Uses

Lannett mischaracterizes its Cocaine Drug's route of administration as "topical" in an effort to prevent customers from becoming aware of a competing product.  *See id.* ¶¶141–43.[13]  Lannett claims its product is "indicated for the introduction of local (topical) anesthesia of accessible mucous membranes of the oral, laryngeal, and nasal cavities."  *Id*. ¶ 107 (quoting Compl. Ex. 8).  No cocaine product has a topical route of administration, and Lannett's false characterization of its Cocaine Drug projects to the outside world that no competing product exists.  *Id*. ¶ 109.

Lannett is trying to create its own market devoid of any possible competing product.  While Lannett's characterization of its Cocaine Drug's route of administration and uses are false, there is exclusionary conduct here that is separate and apart from a mere act of false advertising.  The act of mislabeling the drug's route of administration as topical is not merely an advertisement meant to

---

[13] Genus alleges that customers who are already aware of Lannett's Cocaine Drug and Goprelto® are under the impression that the Cocaine Drug is superior due to Lannett's restructuring of the route of administration.  The antitrust issue is that restructuring the route of administration also prevents unaware customers from learning about Goprelto®.

19

market the drug to potential purchasers, but also a concerted effort to redefine the market to exclude all competitors whose route of administration is properly nasal from even being considered in the first place. *See id.* ¶¶ 142–43. This act of unfairly excluding drugs from the market is itself exclusionary behavior. *See Killian Pest Control, Inc. v. HomeTeam Pest Defense, Inc.*, No. 14-cv-05239, 2015 WL 13385918, at *4 (N.D. Cal. Dec. 21, 2015) (denying motion to dismiss because plaintiff alleged that defendant "deliberately misled consumers to prevent them from realizing they were limiting their choice in the market").

> 2. <u>Lannett Engages in Exclusionary Conduct By Manipulating First Databank into Assigning a Unique CFI Code</u>

Genus alleges that Lannett mischaracterizes its Cocaine Drug's route of administration so that First Databank assigns a unique CFI code, thereby ensuring that its system does not present alternative competing products to doctors when they re-order cocaine hydrochloride solution. Compl. ¶¶ 141–43. Specifically, Genus explains that CFI codes are assigned based on the (1) ingredients, (2) strength, (3) dosage, and (4) route of administration. *Id.* ¶ 116. Products which have these same four characteristics are linked in First Databank's systems and any search for one particular product results in all such linked products appearing as possible substitutes allowing customers to purchase products based on safety, price, and other factors. *Id.* Lannett games First Databank's marketing system into issuing a unique CFI code so that repeat orders for its Cocaine Drug list only Lannett's drug, falsely implying that no other drug is a potential alternative. *Id.* ¶¶ 140–44.[14] The scheme works, and consumers pay a higher price than they otherwise would for an inferior product that lacks FDA-approval. *Id.* ¶¶ 143, 145–46, 148. These allegations are all that is necessary to survive a motion to dismiss.[15]

---

[14] Lannett places scare quotes around the word "manipulate." *See* Dkt. No. 30 at 20. Genus's use of the word is correct based on its normal definitions. Genus alleges that Lannett changes its route of administration to suit Lannett's purposes or advantage by managing or influencing First Databank into accepting its incorrect description.

[15] Genus alleges Lannett characterizes its route of administration as topical, a characterization which is incorrect (*see* Compl. ¶¶ 107–09), and then uses this mischaracterization to improperly obtain a unique CFI code (*see id.* ¶ 141), the effect of which is to exclude Genus from the market (*see id.* ¶¶ 142–44).

20

Lannett incredulously argues that First Databank is just one channel and that Genus is ultimately "free-riding" on Lannett's reputation.  Dkt. No. 30 at 21–22.  Factual disputes will be decided at trial, not now.[16]  *United Food & Commercial Workers Local 1776 v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1067 n.16 (N.D. Cal. 2014) ("the existence of valid business reasons in antitrust cases is generally a question of fact not appropriate for resolution at the motion to dismiss stage") (quoting *Tucker v. Apple Comp., Inc.*, 493 F. Supp. 2d 1090, 1101 (N.D. Cal. 2006)); *Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1133 (N.D. Cal. 2005).

3.   Lannett Engages in Exclusionary Conduct By Deceiving Doctors and Patients Into Believing Its Cocaine Drug is FDA-Approved

Genus's complaint details how Lannett misleads consumers into believing its Cocaine Drug is FDA-approved and/or FDA-authorized.  Compl. ¶¶ 81–83, 99, 87, 89–93.  Even if Lannett could establish that some of its conduct was legally permissible in isolation, the Court must consider the effect of its conduct as a whole because "[t]here are kinds of acts which would be lawful in the absence of monopoly but, because of their tendency to foreclose competitors from access to markets or customers or some other inherently anticompetitive tendency are unlawful under Section 2 if done by a monopolist."  *Free Freehand*, 852 F. Supp. 2d at 1180 (quoting *City of Mishawaka v. Am. Elec. Power Co.*, 616 F.2d 976, 986 (7th Cir. 1980)); *see also City of Anaheim*, 955 F.2d at 1378 (instructing courts to view the "overall combined effect" of the monopolist).

Lannett's scheme prevents customers from considering and comparing alternative products which are FDA-approved.  Compl. ¶¶ 101, 103.  As discussed in Section III.B, *supra*, customers prefer FDA-approved drugs and decide to purchase Lannett's Cocaine Drug based on Lannett's false

---

[16]  Indeed, the cases cited by Lannett were all in the context of summary judgment or trial.  *See Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1160 (9th Cir. 1997) (deciding whether jury instructions were correct); *R.J. Reynolds Tobacco Co. v. Phillip Morris, Inc.*, 199 F. Supp. 2d 362, 365–66 (M.D.N.C. 2002) (deciding upon a motion for summary judgment); *Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanich Legal & Prof'l Publ'ns, Inc.*, 108 F.3d 1147, 1151 (9th Cir. 1997) (deciding the correctness of a jury verdict); *Olympia Equip. Leasing Co. v. Western Union Tel. Co.*, 797 F.2d 370, 371 (7th Cir. 1986) (post-trial); *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1126 (9th Cir. 2004) (post-summary judgment).  Lannett does cite *Schor v. Abbott Labs.*, 457 F.3d 608, 610–11 (7th Cir. 2006) for the contention that cooperation is not the goal of the antitrust laws.  This case was decided at the motion to dismiss stage where the Seventh Circuit explained that "monopoly leveraging" (using a patent in one market to obtain a monopoly in another) does not violate Section 2 unless accompanied by allegations of tying or refusals to deal; something not at issue here.

statements.  *See, e.g.*, *Mutual Pharm. Co. v. Ivax Pharm. Inc.*, 459 F. Supp. 2d 925, 931, 940 (C.D. Cal. 2006) (finding that it "is not the simple act of defendants marketing a non-approved drug that Mutual seeks to combat, but the particular form that marketing has taken; a form that Mutual contends carries certain implicit false suggestions in the minds of the consumer that defendants' drug is FDA-approved").[17]

4.  Lannett Engages in Exclusionary Conduct Through a System of False Advertising

Genus alleged that Lannett engaged in a pattern of false advertising, including claims that it was a "grandfathered product" when it was not, that it was a "generic" drug when it was not, and that it was approved by the FDA when it was not.  *See, e.g.*, Compl. ¶¶ 49–55, 73–79, 81–87, 95–99. Lannett's principal argument is that "advertising and promotion—even if that promotion is false . . . does not restrict competition."  Dkt. No. 30 at 18.  Lannett undermines its own argument in the very next sentence, showing that false promotion can be anticompetitive by setting out the six-factor test used to determine whether false advertising constitutes exclusionary conduct.  *Am. Prof'l Testing Serv.*, 108 F.3d at 1152.

Plaintiffs can overcome the presumption of a *de minimis* effect on competition and thereby show exclusionary conduct by demonstrating that six elements are met.  Plaintiffs can do this by showing that the advertising was "(1) clearly false, (2) clearly material, (3) clearly likely to induce reasonable reliance, (4) made to buyers without knowledge of the subject matter, (5) continued for prolonged periods, and (6) not readily susceptible of neutralization or other offset by rivals."[18]  *Id.* at 1152.  Taking the facts alleged in the Complaint as true, Genus established each of these elements.

Genus identified numerous facts illustrating the clear falsity of Lannett's promotions.  For example, Genus alleges that "[o]n May 7, 2018, Lannett's CEO repeatedly and falsely referred to

---

[17] While *Mutual* dealt only with a Lanham Act case, the principle remains just as valid in the context of an antitrust claim.

[18] The Ninth Circuit requires satisfaction of all six factors, contrary to most other Circuit Courts. *See, e.g.*, *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 323 F.3d 366, 371 (6th Cir. 2003) (only requiring proof that "the advertising was clearly false" and that "it would be difficult or costly for the plaintiff to counter the false advertising" in order to rebut the *de minimis* presumption); *Duty Free Ams. Inc. v. Estée Lauder Cos.*, 797 F.3d 1248, 1268–69 (11th Cir. 2015) (noting that the six factors were "at least relevant," but declining to state whether all the factors were required).

Lannett's C-Topical as 'grandfathered'" when it "is not a grandfathered drug."  Compl. ¶¶ 51, 55.

Additionally, Genus alleges that describing Lannett's drug as a "topical solution" is false because the

drug cannot be used for the "introduction of local anesthesia to the outer surface of the body."  *Id*.

¶¶ 107–08.  Genus makes many other specific factual allegations that Lannett's promotions were

clearly false.  *See, e.g.*, *id*. ¶¶ 49–55, 73–79, 93, 95–99.

Lannett's only argument against this factor is a rehashing of the arguments that it merely lied

to investors, not customers.  Dkt. No. 30 at 19.  As discussed in Sections V.B.1 and V.B.2 of this

brief, *supra*, these arguments are unavailing.  More importantly, however, Lannett's arguments face

an additional fatal flaw for antitrust purposes.  Lannett argues that all statements claiming its

Cocaine Drug were "grandfathered" and marketed under a "preliminary new drug application" were

"made in either investor earnings calls or securities filings" and are therefore "outside the purview of

the Lanham Act."  Dkt. No. 30 at 10:8-22.  Lannett admits those statements were made.  Whether

those statements are acceptable for purposes of a Lanham Act claim is irrelevant to their

implications in an antitrust claim.  Statements made in earnings calls and securities filings routinely

give rise to antitrust lawsuits.  *See, e.g.*, *In re Delta/Airtran Baggage Fee Antitrust Litig.*, 245 F.

Supp. 3d 1343, 1370 (N.D. Ga. 2017) ("Defendants cite to no caselaw, and the Court has located

none, that would support immunizing Defendants from antitrust liability based on anything said on

an earnings call"); *id.* at 1369–70 (confirming that SEC filings can give rise to antitrust liability);

Complaint at 5, *In the Matter of U-Haul Int'l, Inc. and Amerco*, FTC File No. 0810157 (F.T.C.

2010) (Haycock Decl., Exhibit D); *In re Domestic Airline Travel Antitrust Litig*, 221 F. Supp. 3d 46,

67 (D.D.C. 2016) (quoting *In re Delta*, 733 F. Supp. 2d at 1360)).  Lannett's statements are false and

are therefore actionable under the antitrust laws.[19]

Lannett argues that its product claims are made to medical professionals with knowledge of

the subject matter.  *See* Dkt. No. 30 at 19:12–13.  Genus has alleged otherwise.  Compl. ¶¶ 102–04,

Compl. Ex. 30 at 3 (explaining that many healthcare providers, including 91% of pharmacists, are

---

[19] Aside from the conclusory statement that "Genus fails across the board," Lannett does not argue that Genus failed to satisfy factors 2 and 5.  Dkt. No. 30 at 18.  Genus properly alleges the representations were material.  *See, e.g.*, Compl. ¶¶ 114, 121.  Additionally, Genus alleges the false representations occurred over a prolonged period of time.  *Id.* ¶¶ 56–60, 53 (continuing to call its product "grandfathered" years after the FDA rejected such a moniker).

OPPOSITION TO LANNETT'S MOTION TO DISMISS; CASE NO. 18-CV-07603

unaware that not all drugs provided to patients are FDA-approved); Compl. Ex. 29 at 1 (even FDA recognizes that healthcare providers are often unaware of a drug's FDA approval status). Regardless, Genus specifically alleged that consumers relied upon these false statements.   Genus alleges that "Lannett and Cody advertise, promote, distribute, and sell their C-Topical in a manner that misleads relevant purchasers into believing that C-Topical is legally marketed and/or FDA-approved by making false and misleading statements, omissions, and using other tactics likely to create false impressions and confusion regarding FDA approval status of the C-Topical" (Compl. ¶ 152); "customers, including pharmacists and doctors . . . would not purchase [C-Topical] or distribute it to patients" if they knew the truth of the promotions" (*id*. ¶ 104); and Lannett's actions have "interfered with doctors' ability to identify GOPRELTO® as an alternative to C-Topical" (*id*. ¶ 147, *see also id*. ¶ 85 (alleging the package insert was "designed to mislead consumers into believing that C-Topical is FDA approved")).   Moreover, whether customers are sufficiently sophisticated is a factual issue not relevant at the motion to dismiss stage.  *See Emulex Corp. v. Broadcom Corp.*, No. SACV-09-01310, 2010 WL 11595718, at *5 (C.D. Cal. June 7, 2010) ("The Court cannot say at the pleading stage that the potential customers had adequate information as to the patent infringement statements.").

The allegations in Genus's complaint provide numerous reasons to doubt patients and doctors were sophisticated in this particular instance.  First, Genus alleges that consumers were fooled by the misrepresentations, an allegation that must be accepted as true at this stage.   Compl. ¶¶ 113–14. Second, even if doctors are knowledgeable about cocaine hydrochloride as a medical treatment, they may not be knowledgeable about the market for the drug or the number of available alternatives, particularly when Lannett has gone out of its way to prevent doctors from even seeing the Goprelto® alternative.  *Id*. ¶ 218; *see also Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1127 (10th Cir. 2014) (rejecting district court's finding that doctors were sophisticated because plaintiff "presented evidence that even sophisticated consumers would rely on Medtronic's false statements" and thus "a fact-finder could reasonably infer that Medtronic made its representations to hospital buyers who would not have known whether the bone mills were dangerous").  Additionally, Lannett provides no reasons why doctors or pharmacists are sophisticated when it comes to database

systems.  Doctors have no particular expertise in questions such as how CFI codes are assigned, the procedures by which drugs are added to a database, or whether the database is showing them all available drug options.

Finally, Genus properly alleged that the false promotions could not readily be neutralized. For instance, Genus alleges that "Lannett makes it prohibitively difficult for customers to find a competing product," and that "customers" tend to repeat their last order or search directly for C-Topical," making it difficult to rebut the false promotions.  Compl. ¶ 143.  Further, Genus alleges that "[w]holesalers, GPOs, and IDNs use, or rely upon, First Databank's CFI codes to compare products" implicitly recognizing that other marketing methods may not be successful.  *Id.* ¶ 134.

Genus alleged conduct that surpasses mere misrepresentations and establishes an antitrust violation.  "Advertising that creates barriers to entry in a market constitutes predatory behavior of the type the antitrust laws are designed to prevent."  *Phototron Corp. v. Eastman Kodak Co.*, 842 F.2d 95, 100 (5th Cir. 1988).  Here, the false advertising resulted in First Databank improperly assigning a unique CFI code.  This conduct forecloses competition by interfering with purchasers' ability to consider and compare Lannett's Cocaine Drug and Goprelto® as competing products.  Compl. ¶ 144.

## VI.   **<u>CONCLUSION</u>**

For the foregoing reasons, Genus respectfully requests the Court deny Lannett's motion to dismiss under the Lanham Act.[20]  Unapproved and unregulated drug products are not exempt from private false advertising claims.  In addition, the Court should deny Lannett's motion to dismiss under the Sherman Act.  Lannett's conduct, as a whole is anticompetitive.  If the Court concludes that Genus needs additional facts in its pleading, Genus respectfully requests the opportunity to amend its complaint.

---

[20]  Genus respectfully requests that the Court also deny the motion to dismiss Genus's California false advertising claims under Cal. Bus. & Prof. Code § 17500 and California unfair competition claims under Cal. Bus. & Prof. Code § 17200, which Lannett does not address in its motion.

Respectfully submitted,

Dated: March 4, 2019          By:     */s/ Michael J. Freno*

Michael J. Freno
michael.freno@klgates.com
Jeffrey C. Johnson
jeff.johnson@klgates.com
Harold Storey
harold.storey@klgates.com
Elizabeth Weiskopf
elizabeth.weiskopf@klgates.com
**K&L GATES LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
206.623.7580 t
206.623.7022 f
(*pro hac vice*)

Jason N. Haycock
jason.haycock@klgates.com
**K&L GATES LLP**
4 Embarcadero Center, Suite 1200
San Francisco, CA 94111-5994
jason.haycock@klgates.com
415.882.8200 t
415.882.8220 f

Allen Bachman
allen.bachman@klgates.com
**K&L GATES LLP**
1601 K Street NW
Washington D.C., 20006-1600
202.778.9000 t
202.778.9100 f
(*pro hac vice* to be submitted)

*Attorneys for Genus Lifesciences Inc.*