UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENUS LIFESCIENCES INC., <br><br> Plaintiff, <br><br> v. <br><br> LANNETT COMPANY, INC., et al., <br><br> Defendants. | Case No. 18-cv-07603-WHO <br><br> **ORDER GRANTING MOTION TO QUASH SUBPOENA; DENYING AS MOOT MOTION TELEPHONIC APPEARANCE AND FOR PERMISSION FOR ELECTRONIC CASE FILING** <br><br> Re: Dkt. Nos. 87, 89, 90 |

## INTRODUCTION

Non-party Michael Singer moves to quash a subpoena issued by plaintiff Genus Lifesciences Inc. ("Genus") to produce documents relating to Singer's former employment with defendant Lannett Company Inc. ("Lannett"). Singer requests that the subpoena be quashed because it would result in a significant expense, could subject him to sanctions from Lannett for producing privileged or confidential information, and is unduly burdensome because the requested documents are also in Lannett's possession. Genus has not requested the documents from Lannett. I agree with Singer, particularly regarding the burden Genus seeks to impose on him before seeking the same documents from a party to the litigation, and GRANT his motion to quash. His subsequent motions for telephonic appearance and permission for electronic case filing are DENIED as moot.

## BACKGROUND

### I. PROCEDURAL BACKGROUND

Genus sued defendants, competitors in the market of cocaine hydrochloride nasal spray, for falsely advertising, marketing and promoting their product and unfairly competing with it in ways

that violate the law. *See* First Amended Complaint [Dkt. No. 54]. On September 12, 2019, Genus served a document subpoena on non-party Michael Singer, a former salesperson for defendant Lannett who specialized in marketing and selling Lannett's products. *See* Declaration of Jason N. Haycock in Support of Plaintiff Genus Lifesciences Inc.'s Response to Michael Singer's Motion to Quash Subpoena or for Protective Order ("Haycock Decl.") [Dkt. No. 93] ¶ 3 & Ex. 1 (copy of document subpoena served on Michael Singer).

After back and forth between the parties, as detailed below, Singer filed this motion to quash subpoena and/or for a protective order. *See* Notice of Motion and Motion to Quash Subpoena and for Protective Order and Memorandum of Points and Authorities in Support of Motion for Protective Order ("Mot.") [Dkt. No. 87]. Although his motion was not noticed for a hearing date, Singer requests telephonic appearance. Dkt. No. 89. Because Singer is proceeding *pro se*, he also seeks permission for electronic case filing. *See* Dkt. No. 90.

Genus responded to Singer's motion on October 29, 2019. *See* Plaintiff Genus Lifesciences, Inc.'s Brief in Response to Michael Singer's Motion to Quash or for Protective Order ("Oppo.") [Dkt. No. 92]. Lannett has not filed a response to this motion.

## II. FACTUAL BACKGROUND

Genus's document subpoena requests three categories of documents: (i) agreements Singer has, or had in the past, with Lannett, including employment agreement(s); (ii) promotional literature, advertisements, and training materials related to cocaine hydrochloride; and (iii) communications with Lannett, doctors, pharmacists, surgery centers, or other customers related to cocaine hydrochloride. Haycock Decl., Ex. 1.

On September 24, 2019, Singer acknowledged receipt of the subpoena and proposed a plan to respond. *See* Haycock Decl., Ex. 2 (copy of letter from Singer to Genus); Affidavit of Michael Singer Regarding Motion for Protective Order [Dkt. No. 88], Ex. 1 (same). Singer proposed that he would review his files, make a list of documents in his possession, and then submit the list to Genus and Lannett. *Id.* He requested that Genus and Lannett review the list to determine which documents should be produced under the Protective Order. *Id.* He requested $0.45 per copy and $250 per hour for his time. *Id.*

2

On September 28, 2019, Genus responded, providing Singer with more time to comply with the document subpoena, agreeing to compensate him up to $500 in photocopying costs and $1,000 for his time, and offering to designate all produced documents as "Highly Confidential" under the Protective Order so as to avoid any issue about confidentiality. *See* Haycock Decl., Ex. 3.

On September 30, 2019, Singer told Genus he was afraid that Lannett would sue him if he produced the documents in his possession, and reiterated his initial proposal to provide a list of documents to Genus and Lannett so that they could determine what should be produced. *Id.*, Ex. 4. Singer also expressed concerns about Genus's reimbursement caps, stating that "If you cap it, then I will work to the time of the caps and then stop." *Id.*

On October 2, 2019, Lannett informed Genus and Singer that the documents in Singer's possession "may implicate Lannett's attorney-client (or other) privilege." Haycock Decl., ¶ 7 & Ex. 5. Lannett demanded that it review the documents prior to production "to ensure that privileged documents are not produced." *Id.* Lannett suggested that Genus instruct Singer "to provide all potentially responsive documents to Lannett's counsel," and then Lannett would "review those documents and produce any responsive, non-privileged documents to Genus within 10 business days." *Id.*

On October 3, 2019, Singer responded to both parties, reiterating his proposal to send a list of documents to the parties for review and again demanding full compensation for his time. Haycock Decl., ¶ 8 & Ex. 6. He stated that if the parties could not agree to his proposal, then he would file a motion for protective order "to protect himself." *Id.*

On October 9, 2019, Genus agreed to Singer's compensation terms and proposed the following three-step process for resolution: "(1) Mr. Singer would review his files for hard-copy and digital records (up to 4 hours); (2) he would prepare a list of documents and send the list to Genus and Lannett (up to 1.5 hours); and (3) then submit the documents electronically to counsel for Lannett. Lannett's counsel would review the materials and produce all non-privileged documents within ten days." Oppo. 4-5; Haycock Decl. ¶ 9 & Ex. 7. Genus states that it set the proposed time limits based on Singer's own estimates outlined in his initial September 24, 2019

3

letter. Oppo. 5; *see* Haycock Decl., Ex. 2 (stating that Singer believes it will take him 4 hours to review all documents and 1.5 hours to list the responsive documents). With this proposed resolution, Genus agreed to reimburse Singer up to $500 for photocopying costs and increased its offer to compensate Singer at his request for $250 per hour for estimated 5.5 hours to locate and send a list of documents to Genus and Lannett. Oppo. 5; *see* Haycock Decl., Ex. 7.

On October 10, 2019, Singer acknowledged and agreed that at least "we are all now on the same page as to how to handle the documents and to keep myself protected as we all finally agree." Haycock Decl., ¶ 11 & Ex. 8. But he contended that he already spent 5 hours in dealing with this back and forth and under Genus's solution would only spend another half hour going through his documents and compiling a list. *Id.*

Later the same day, Lannett objected to Genus's solution on two grounds. Haycock Decl., ¶ 12 & Ex. 9. First, it argued that Singer should not provide Genus with even the list of documents because "the list may itself" disclose privileged or highly confidential information. *Id.* Second, despite its earlier agreement to produce non-privileged documents to Genus ten days after receipt from Singer, Lannett asserted that it does not know the nature and volume of the documents and therefore will provide non-privileged responsive documents to Genus "as quickly as practicable." *Id.*

The next day, on October 11, 2019, Singer responded that "there is no agreement [on] how to handle the documents" and stated that he is "unwilling to play this back and forth game with the parties." Haycock Decl., ¶ 13 & Ex. 10. He requested that Genus withdraw the subpoena by 4:00 p.m. that same day or else he would file a motion for protective order. *Id.* On October 15, 2019, Singer filed his motion to quash subpoena or for protective order. *See* Mot.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 45 governs discovery from nonparties by subpoena. Pursuant to Rule 45(a)(1)(D), a party may serve a subpoena commanding a nonparty to produce materials. "The scope of discovery through a Rule 45 subpoena is the same as the scope of discovery permitted under Rule 26(b)." *Sullivan v. Personalized Media Commc'ns, LLC*, No. 16-mc-80183-MEJ, 2016 WL 5109994, at *2 (N.D. Cal. Sept. 21, 2016). "Parties may obtain

4

1   discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

2   proportional to the needs of the case, considering the importance of the issues at stake in the

3   action, the amount in controversy, the parties' relative access to relevant information, the parties'

4   resources, the importance of the discovery in resolving the issues, and whether the burden or

5   expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The

6   court must limit discovery if it determines that "the discovery sought is unreasonably cumulative

7   or duplicative, or can be obtained from some other source that is more convenient, less

8   burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(c)(i).

9   Under Rule 45, the serving party may move the court for an order compelling production

10  or inspection. Fed. R. Civ. P. 45(d)(2)(B)(i). Also, a court "must quash or modify a subpoena

11  that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the

12  geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other

13  protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."

14  Fed. R. Civ. P. 45(d)(3)(A). The court also "must protect a person who is neither a party nor a

15  party's officer from significant expense resulting from compliance" with the subpoena. Fed. R.

16  Civ. P. 45(d)(2)(B)(ii). "On a Rule 45 motion to quash a subpoena, the moving party has the

17  burden of persuasion, but the party issuing the subpoena must demonstrate that the discovery

18  sought is relevant." *Pers. Audio LLC v. Togi Entm't, Inc.*, No. 14-MC-80025 RS (NC), 2014 WL

19  1318921, at *2 (N.D. Cal. Mar. 31, 2014).

## DISCUSSION

21  Singer's motion raises three issues: (i) Singer wants to avoid "significant expense;" (ii) he

22  does not want to expose himself to liability to Lannett for producing privileged or confidential

23  information; (iii) and he does not want to incur undue burden if the documents in his possession

24  are equally obtainable from Lannett. *See* Mot. 4-9. Genus argues that each of these issues "can be

25  resolved by merely enforcing the agreement between Mr. Singer and Genus prior to Lannett's

26  objection." Oppo. 6. In particular, Genus requests that I allow Singer to produce a list of

27  responsive documents to Genus and Lannett, allow him to produce the documents to Lannett, who

28  will then produce all non-privileged documents to Genus along with a privilege log within ten

days. Oppo. 9. In the alternative, it requests that I allow Singer to produce the documents to Lannett, who will then produce all non-privileged documents to Genus along with a privilege log within ten days. *Id.*

Under Rule 45, a court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). "In general, there is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests." *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012) (collecting cases). When the requesting party has "not shown [that it] attempted to obtain documents from the [opposing party] in an action prior to seeking the documents from a non-party, a subpoena duces tecum places an undue burden on a non-party." *Id.* Further, "when an opposing party and a non-party both possess documents, the documents should be sought from the party to the case." *Soto*, 282 F.R.D. at 505.

Singer seeks to quash the document subpoena because he argues that the documents in his possession are more readily available from his former-employer Lannett, who is party to this litigation. Mot. 4-6. The document subpoena requests that Singer produce any agreements he has had with Lannett, all of Lannett's promotional literature or other materials relating to C-Topical or cocaine hydrochloride, and communications with Lannett and other parties relating to cocaine hydrochloride. Haycock Decl., Ex. 1. These documents should be in the possession of Lannett, a party to this litigation.

In an affidavit accompanying his motion, Singer states that he has no documents that are not already in the custody or control of Lannett because he provided all that he has to Lannett before he left his employment. *See* Affidavit of Michael Singer Regarding Motion for Protective Order [Dkt. No. 88], ¶ 6 ("I, at the time I left the employ of Lannett had prepared and submitted to the current CEO and incoming CEO a package of documents, approximately five hundred pages of documents."). Singer also argues that it would require substantial time and effort for him to assemble all the documents in his possession because he would have to ascertain if they are protected under the Stipulated Protective Order to avoid sanctions. Mot. 5. He described this as a "catch-22 situation" because Genus may seek sanction for non-compliance with the subpoena but

1    Lannett might sue him for releasing protected company material. *Id.*

2    Genus argues that its proposed solution addresses Singer's concern because the list of documents Singer will give to Genus will help it determine what documents it can then obtain from Lannett. Oppo. 9. But Lannett objects to releasing a list of documents to Genus, and more importantly, points out that Genus's suggestion is in reverse order. It should first attempt to obtain the documents from Lannett and then, if need be, send a more tailored subpoena to Singer.

Genus asserts that "one of the factors driving third party discovery in this case is that Lannett has previously failed to produce documents that Genus has independently discovered during its investigation." Oppo. 9. To support this, it cites its opposition brief in an earlier motion to dismiss in this case in which it generally argued that Lannett did not respond to its requests for documents. That may or may not be true, but Genus does not establish that it asked Lannett for the same documents it requests from Singer.

Because of Genus's failure to attempt to obtain the requested documents from Lannett prior to seeking them from Singer, its subpoena is an undue burden on Singer. *See, e.g.*, *Ow v. United States*, No. 17-CV-00733-SK, 2018 WL 6267839, at *1 (N.D. Cal. June 12, 2018) (granting in part motion to quash subpoena for documents that plaintiffs could have obtained directly from defendant). Singer's motion to quash the subpoena is GRANTED.[1]

## CONCLUSION

Singer's motion to quash is GRANTED because the documents requested in Genus's subpoena can be obtained from the opposing party Lannett in a way that would be more

---

[1] Given that Genus has not first attempted to receive these documents from Lannett, I need not address Singer's other two arguments that the document request creates a significant expense or requires him to produce Lannett's confidential or privileged documents.

7

convenient and less burdensome.

**IT IS SO ORDERED.**

Dated: December 30, 2019

William H. Orrick
United States District Judge